# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AHMAD MUAFFAQ ZAIDAN                              Case No.
c/o Reprieve US
420 Lexington Avenue
Suite 1706
New York, NY 10170


BILAL ABDUL KAREEM,
c/o Reprieve US
420 Lexington Avenue
Suite 1706
New York, NY 10170


                    Plaintiffs,


          v.


DONALD J. TRUMP,
President of the United States
The White House
1600 Pennsylvania Avenue, N.W.
Washington, D.C.  20500;

MICHAEL RICHARD POMPEO,
Director of the Central Intelligence Agency
Central Intelligence Agency
Washington, D.C.  20505;

JAMES MATTIS,
Secretary of Defense
Department of Defense
1000 Defense Pentagon
Washington, D.C.  20301-1000;

JOHN F. KELLY,
Secretary of the Department of Homeland
Security
Washington, D.C.  20528;

JEFFERSON B.  SESSIONS,
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue. N.W.
Washington, D.C.  20530-0001;

DAN COATS,
Director of National Intelligence
Office of the Director of National Intelligence
Washington, D.C.  20511;

HERBERT        RAYMOND        ("H.R.")
MCMASTER, National Security Adviser
Executive Office of the President
The White House
1600 Pennsylvania Avenue N.W.
Washington, DC  20500;

THE UNITED STATES DEPARTMENT OF
DEFENSE
1400 Defense Pentagon
Washington, D.C.  20301-1400;

THE UNITED STATES DEPARTMENT OF
JUSTICE
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530-0001;

THE UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
Washington, D.C.  20528;

THE CENTRAL INTELLIGENCE AGENCY
Washington, D.C.  20505;

THE UNITED STATES OF AMERICA
U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530,

                        Defendants.

## **COMPLAINT**

### **Introduction**

    1.     Plaintiffs Ahmad Muaffaq Zaidan (hereinafter "Zaidan") and Bilal Abdul Kareem

(hereinafter "Kareem") bring this action to prohibit defendants from placing and maintaining

them on a "Kill List" (also referred to as a "Disposition Matrix"), which has resulted in their

being targeted for death.   Plaintiffs are both journalists who do courageous and important

reporting in some of the most difficult areas of the world.   Their travel, communications, social

media content and contacts, related data and metadata have been input into "algorithms" used by the United States to identify terrorists.  Those algorithms have identified them as persons to be killed, not because they are terrorists but because the methodologies employed by defendants result in the unjustified killing of innocent people.  Plaintiffs' inclusion on the Kill List is the result of arbitrary and capricious agency action, accomplished without due process, and in violation of the United States Constitution and U.S. and international law.

2.      Plaintiffs seek declaratory and injunctive relief under the Administrative Procedure Act, including:

(i) a declaration that the inclusion of plaintiffs Zaidan and Kareem on the Kill List is the result of arbitrary and capricious agency action and/or is unlawful and/or is unconstitutional; and/or

(ii) an injunction prohibiting the inclusion of plaintiffs Zaidan and Kareem on the Kill List unless and until defendants establish, and plaintiffs are given the opportunity to challenge their inclusion on the Kill List in, a process that comports with standard elements of due process including notice, access to the evidence against them, and a right to be heard; and/or

(iii) an injunction requiring that defendants remove plaintiffs Zaidan and Kareem from any and all lists of persons to be targeted for drone strikes or other killing; and/or cease conducting military strikes that target plaintiffs Zaidan and Kareem; and/or adhere to Executive Order 12,333, § 2.11, Executive Order, the "U.S. Policy Standards and Procedures for the Use of Force in Counterterrorism Operations Outside the United States and Areas of Active Hostilities," and Executive Order 13,732 "United States Policy on Pre- and Post-Strike Measures to Address Civilian Casualties in U.S. Operations

Involving the Use of Force," whenever lawfully conducting drone strikes.

**Parties**

3.      Plaintiff Zaidan is a Syrian and Pakistani citizen, and a respected journalist who served as Pakistani Bureau Chief for Al Jazeera for over twenty years. He is one of only two journalists to have interviewed Osama Bin Laden prior to 9/11. In performing his job as a journalist, Zaidan regularly investigates and reports on terrorism and its causes. Zaidan is a "person" with standing to sue under the Administrative Procedure Act, 5 U.S.C. §§ 551(2), 701(b)(2), and 702.  His interest as an innocent civilian in not being killed by the United States Government or any of its agencies is within the "zone of interests" protected by the regulations, statutes and Executive Order at issue in this complaint.

4.      Plaintiff Kareem is a citizen of the United States of America and freelance journalist who has lived in New York for most of his life. As a journalist, Kareem has conducted extensive reporting for news outlets such as BBC, Channel 4 (United Kingdom), CNN, Sky News and Al Jazeera. He travelled to Syria in 2012 to report on the conflict there and to give an on the ground perspective.  During the past year, Kareem has narrowly avoided being killed by five separate air strikes, at least one of which was carried out by a drone. Kareem is a "person" with standing to sue under the Administrative Procedure Act, 5 U.S.C. §§ 551(2), 701(b)(2), and 702.  His interest as a U.S. citizen and innocent civilian in not being killed by the United States Government or any of its agencies is within the "zone of interests" protected by the regulations, statutes and Executive Order at issue in this complaint.

5.      Defendant Donald J. Trump is the President of the United States. The President bears ultimate responsibility for the actions at issue here and in the past has directly and personally participated in the decisions to authorize targeting individuals for death as part of the

programs at issue in this complaint.   While plaintiffs were placed on the Kill List by his predecessor, on information and belief, defendant Trump has continued to include them on the Kill List and has, in addition, removed certain restrictions and criteria previously employed in the designation of persons to be included on the Kill List.  Through counsel, plaintiffs wrote to President Trump on January 20, 2017, seeking assurances that he would not continue the efforts to kill them.  Defendant Trump has not replied.

6.     Defendant Central Intelligence Agency ("CIA") is an agency of the United States and is involved in the decision to include persons, including, on information and belief, plaintiffs, on the Kill List.  The CIA has targeted and killed individuals with drone strikes.

7.     Defendant Michael R. Pompeo is the Director of the CIA, and is ultimately responsible for the decisions made by the CIA concerning the inclusion of persons, including on information and belief, plaintiffs, on the Kill List.  He has also overseen drone strikes conducted by the CIA.

8.     Defendant Department of Defense ("DOD") is an agency of the United States and is involved in the decision to include persons, including, on information and belief, plaintiffs, on the Kill List.  The DOD has targeted and killed individuals with drone strikes.  It is also part of the National Security Council and is responsible for reviewing and approving drone strikes.

9.     Defendant General James N. Mattis is the Secretary of Defense, and is involved in the decision to include persons on the Kill List.  He is ultimately responsible for the decisions made by and conduct of DOD, including its participation in the Kill List and attacks on the plaintiffs.

10.     Defendant Department of Homeland Security ("DHS") is an agency of the United States, which is part of the National Security Council and is involved in the decision to include

persons, including, on information and belief, plaintiffs, on the Kill List.  It is responsible for reviewing and approving drone strikes.

11.     Defendant John F. Kelly is the Secretary of DHS. He is ultimately responsible for the decisions made by and conduct of DHS, including its participation in the Kill List and attacks on the plaintiffs.

12.     Defendant Department of Justice ("DOJ") is an agency of the United States, is part of the National Security Council, and is involved in the decision to include persons, including, on information and belief, plaintiffs, on the Kill List.  It is responsible for reviewing and approving drone strikes.  DOJ also conducts a legal analysis of the constitutionality of taking lethal action against a U.S. person nominated to the Kill List.

13.     Defendant Jefferson B. Sessions is the Attorney General of the United States and is head of DOJ.  He is ultimately responsible for the decisions made by and conduct of DOJ, including its participation in the Kill List and attacks on the plaintiffs.

14.     Defendant Daniel R. Coats is the Director of National Intelligence. He is involved in the decision to include persons, including, on information and belief, plaintiffs, on the Kill List.

15.     Defendant Herbert Raymond ("H.R.") McMaster is the National Security Adviser. He is involved in the decision to include persons, including, on information and belief, plaintiffs, on the Kill List.

16.     Upon information and belief, plaintiffs allege that defendants unlawfully nominated and approved the inclusion of each of the plaintiffs on the Kill List after which one or more of the defendants approved, authorized and ultimately launched the attacks described below on the plaintiffs.

17.     The United States is named as a party pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702 and 703.

## Jurisdiction and Venue

18.     This Court has jurisdiction under 28 U.S.C. §§ 1331 & 2201.

19.     The United States District Court for the District of Columbia is a proper venue for this action.

## Statement of Facts

### Facts regarding Plaintiff Zaidan

20.     Zaidan did not plan, authorize, commit, or aid the terrorist attacks that occurred on September 11, 2001, or any other terrorist attack.

21.     Zaidan has never harbored or supported any person or organization that, in any way, planned, authorized, committed, or aided the September 11, 2001 attacks, or any other terrorist attack.

22.     Zaidan has no association with Al-Qaeda or the Taliban.

23.     Zaidan does not pose any threat, let alone an immediate threat, to the United States, its citizens, residents or persons, or its national security.

24.     On information and belief, plaintiffs allege that defendants have nominated and targeted Zaidan for lethal action, in part, as a result of an analysis, or algorithm applied by a computer program, of his communications, travel, and social media activity as well as other information.

25.     Zaidan is a well-respected journalist who has reported for decades on conflict in the Middle East, Pakistan and Afghanistan.  He served as Al Jazeera's Islamabad Bureau Chief, and is now stationed in Qatar.

26.     As a journalist engaged in traditional reporting and commentary on the Middle East, terrorism and the so-called "War on Terror," Zaidan frequently communicates with sources who have connections with terrorists and their associates.  He travels extensively in countries and regions in which terrorists are active.

27.     In addition, Zaidan's work as a journalist has resulted in his social media accounts understandably and innocently containing words and phrases associated with terrorism.  For example, his Twitter feed contains terms such as Taliban, Bin Laden, Abbottabad, 9/11, Twin Towers, Zawahiri, Brotherhood, Attack, U.S.S. Cole, Gaza, West Bank, Palestine, Crusader, Unbeliever, Blood, Suicide, Islamic State, Drone, Guantanamo, Torture, Killing, Occupation, Death, Saddam, Attack, Occupation, Al-Baghdadi, Allegiance, Caliph, Al-Nusra, Martyr, Operation, Shia, Sufi, Sharia, Assassination, Peshawar, Haqqani, Gul Bahadir and ISI, to list just a few.

28.     Among Zaidan's biggest journalistic achievements have been his interviews with leaders of Al-Qaeda and the Taliban, including Osama bin Laden. In 1998, Zaidan secured the first ever interview with Bin Laden. Zaidan secured a second interview with him at Bin Laden's son's wedding on January 21, 2001.  Zaidan also reported his experiences as part of an Al-Jazeera documentary, "*In search of al-Qaeda*," which was an oral history of Bin Laden's time in Afghanistan and Pakistan.

29.     Plaintiff Zaidan's reporting on Osama Bin Laden and Al Qaeda has been featured on CNN (Christiane Amanpour, November 15, 2002) and PBS's award winning program, Frontline (September 7, 2002).

30.     Zaidan was also the first journalist to interview Baitullah Mehsud, the leader of Tehreek-e Taliban-e Pakistan (TTP, Taliban Movement of Pakistan) on television.   These, and

all his interviews, were investigative journalism and did not constitute or imply support for those interviewed or their causes.

31.     Zaidan also interviewed Abu Mohammad al-Jolani, the leader of what was called the Al Nusra Front, regarding its positioning itself as the natural heir of jihadi ideology.

32.     In May 2015, Zaidan was among the first, if not the first, journalists to enter the area controlled by the "Free Syrian Army."   A Syrian national, from Idlib, Zaidan wrote two reports of the battles of the Free Syrian Army in Idlib that angered the Bashar Assad regime. This led to the false assertion on Syrian State Television that plaintiff Zaidan was a member of Al-Qaeda. As part of his work as a journalist, Zaidan has also traveled to places where he might be expected to meet with extremists in the course of his investigative reporting.

33.     Plaintiffs allege, upon information and belief, that Zaidan's legal, innocent, and successful journalism resulted in defendants' false conclusion that Zaidan is a member of the Muslim Brotherhood and a member of and courier for Al-Qaeda.   These erroneous conclusions are contained in a U.S. intelligence document published online, entitled "SKYNET:  Applying Advanced Cloud-based Behavior Analytics," which purports to demonstrate the capabilities of the intelligence program SKYNET.   SKYNET is used by defendants to identify potential terrorists based on "metadata" – that is, the electronic patterns of their communications, writings, social media postings, and travel.

34.     According to the document, SKYNET identifies potential targets, such as the given example, plaintiff Zaidan, based on metadata analysis and cellphone tracking. SKYNET "applies complex combinations of geospatial, geotemporal, pattern-of-life, and travel analytics to bulk DNR [Dial Number Recognition] data to identify patterns of suspect activity." But, as is

evident here, SKYNET may target persons solely because they frequently interact with so-called "militants," even if for innocent reasons like journalists interviewing sources.

35. Defendants' false classification of plaintiff Zaidan as a terrorist, based on SKYNET's metadata analysis, has prompted defendants to place him on their Kill List and target him to be killed.

36. Zaidan has never been given official notice that he is on the Kill List, access to the evidence on which his inclusion is based, or an opportunity to contest his illegal death sentence or present an explanation of his activities.

37. After the media reported that Zaidan was targeted by the defendants, he fled Pakistan for Al Jazeera headquarters in Qatar. He can leave Qatar to continue his work as a journalist only at his peril.

38. Plaintiff Zaidan is a person "taking no active part in the hostilities" within the meaning of 18 U.S.C. § 2441(d)(1)(D). He does not pose any threat, much less an immediate threat, to United States citizens, persons, or national security, and thus his killing would constitute an assassination within the meaning of Executive Order 12,333, § 2.11.

39. Plaintiff Zaidan is not a person who planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, within the meaning of the 2001 Authorization for Use of Military Force against those responsible for the September 11, 2001 attacks against the United States, Public Law 107-40, § 2(a).

**Facts Regarding Plaintiff Kareem**

40.     Kareem is a citizen of the United States.  He did not plan, authorize, commit, or aid the terrorist attacks that occurred on September 11, 2001, or any other terrorist attack.

41.     Kareem has never harbored any person or organization that, in any way, planned, authorized, committed, or aided the September 11, 2001 attacks, or any other terrorist attack.

42.     Kareem has no association with Al-Qaeda or the Taliban.

43.     Kareem does not pose any threat, let alone an immediate threat, to the United States, its citizens, residents or persons, or its national security.

44.     Kareem has reported for numerous media outlets and news organizations including Al Jazeera, CNN, Channel 4 (United Kingdom), the BBC, and Skynews.    For example, with award-winning journalist Clarissa Ward, Kareem worked on the EPPY-nominated CNN series "The Truth About Syria: Undercover Behind Rebel Lines."

45.     Presently, he is a journalist reporting for On the Ground Network ("OGN"), an independent news channel that posts interviews with rebel fighters on social media outlets. OGN's objective is to provide independent, investigative journalistic coverage and access to the views of the anti-Assad rebels, so that the views of all involved in Syria's conflict are documented. Kareem is one of the only Western journalists in the region given access to these individuals to interview them.   As a result, Kareem interacts with local "militants" during interviews, frequently using a variety of recording equipment and radio devices—including cellphones, satellite phones, and handheld transceivers—when interacting with them.

46.     While acting as a journalist covering anti-Assad rebels in Syria, Kareem has narrowly missed being hit by military strikes on a number of separate occasions.

47.     The first of these occasions occurred at the beginning of June 2016 in Idlib City. Kareem, who had been out filming with an OGN crew, returned to the office.  He heard aircraft approaching. With the others who accompanied him, he ran inside. The strike hit the OGN building.  The studio is underground and the whole building, including the office, shook.

48.     The second strike was also in early June in the town of Hariyataan, not far from Aleppo, at around 11:00 AM.  Kareem was with his cameraman standing outside filming in the street. Kareem asked the cameraman to go a bit further down the street and set up from the other side so he could film Kareem and the person who he was interviewing talking and walking up the street. He had arranged to interview a local man who owned a supermarket. There were drones buzzing above. As they started walking up the hill to view destroyed homes a street away, there was a loud explosion. When they returned, the area where they had been standing and filming was a wasteland. There was still fresh smoke in the air and shrapnel all around.

49.     The third occasion on which Kareem narrowly missed being killed occurred on June 26, 2016, in an area called Khantounam, near an area called Talkheis.  The vehicle of Kareem and his staff was struck and destroyed by a drone-launched Hellfire missile. Kareem had noticed that a drone had been circling the area where he and his team had been filming. When the strike occurred, Kareem was sitting in a pick-up truck, parked under a tree, and the others were in an OGN vehicle. All of a sudden, everything went black. Kareem had been facing in one direction towards the tree, and suddenly the vehicle was flipped upside down.  The vehicle had been hurled into the air by the force of the blast; it turned over and also ended up facing the other way. Kareem only survived because he was wearing a bullet proof press vest.

50.     The fourth occasion on which Kareem narrowly missed being killed occurred on June 28, 2016, again in Idlib City. On that date, Kareem's office at OGN was targeted. The

missile that hit the building killed three civilians -- a woman, her 10 year old daughter, and an elderly man.

51.     The fifth occasion on which Kareem was nearly killed was in mid-August 2016. Kareem was at the *Kulliyatul Midfa'iyyah* – the Artillery College.  He had gone there to film as the area had recently changed hands from government control to rebel hands. Kareem and three other people from OGN were driving in Kareem's car. They had almost arrived, but were still moving when there was a huge blast only yards away from the car. One person sitting in the back of the car got shrapnel in his ear. Kareem and the others were all picking glass and steel out of their skin for some time after.

52.     Upon information and belief, plaintiffs allege that Kareem was the specific target of the strikes discussed in paragraphs 47 - 51 above and that those strikes were carried out as a result of Kareem's inclusion by defendants on a U.S. Kill List.

53.     Plaintiff Kareem is a person "taking no active part in the hostilities" within the meaning of 18 U.S.C. § 2441(d)(1)(D).  He does not pose any threat, much less an immediate threat, to United States citizens, persons or national security, and thus his killing would constitute an assassination within the meaning of Executive Order 12,333, § 2.11.

54.     Plaintiff Kareem is not a person who planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, within the meaning of the 2001 Authorization for Use of Military Force against those responsible for the September 11, 2001 attacks against the United States, Public Law 107-40, § 2(a).

**Facts Relating to the Kill List**

55.     Defendants have admitted that the United States conducts lethal strikes targeted at individuals, using remotely piloted aircraft, among other weapons, and that targets are selected

by them as a result of a "process" in which targets are nominated by one or more defendants, and their inclusion on the Kill List is confirmed through a series of meetings and discussions among defendants.

56.     Then-Director of defendant CIA John Brennan also admitted this decision-making process and the existence of a lethal drone program in a speech at the Woodrow Wilson International Center for Scholars in Washington, DC on April 30, 2012.   He acknowledged that the "very most senior officials in our government" review proposals of individuals for targeting.

57.     Then-President Barack H. Obama also discussed how the U.S. identifies individuals to target with drone strikes in a speech at the National Defense University on May 23, 2013, remarking that he insists "upon clear guidelines, oversight and accountability that is now codified in Presidential Policy Guidance that I signed yesterday."

58.     This Presidential Policy Guidance (the "PPG") was declassified and made public on August 6, 2016.

59.     The PPG sets out the process by which the defendants propose persons, identified by name or metadata, to be included in the Kill List, review the proposals, and reach a final decision to include persons in the Kill List.  Plaintiffs allege, on information and belief, that they were included on the Kill List through this process.

60.     Plaintiffs allege, on information and belief, that defendant CIA has an operational plan through which it conducts a selection process for placing people on its own Kill List, which includes the use of the NSA's computer program, SKYNET.

61.     Agencies need not identify a target by name; the PPG requires agencies conducting lethal action only to "employ all reasonably available resources to ascertain the identity of the target so that action can be taken."  PPG § 1.F.  This permissive lack of confirmed

identity accords with former CIA director Michael Hayden's public statement in May of 2014: "We kill people based on metadata."  Targets may be placed on a Kill List identified only by cellphone number and not by actual name.

62.     Section 3 of the document sets forth the Policy Standard and Procedure for Designating Identified HVTs for Lethal Action.  It states that an "individual whose identity is known will only be eligible to be targeted . . . if the individual's activities pose a continuing, imminent threat to U.S. persons."  PPG § 3.A.

63.     The PPG (§ 3.B) specifies several "necessary preconditions for taking lethal action."  These include:

a.  Near certainty that a high value target is present;

b.  Near certainty that non-combatants will not be injured or killed;

c.  A third element, which is redacted in the PPG;

d.  An assessment that capture is not feasible at the time of the operation;

e.  As assessment that the relevant governmental authorities in the country where action is contemplated cannot or will not effectively address the threat to US. persons; and

f.  An assessment that no other reasonable alternative to lethal action exists to effectively address the threat to U.S. persons.

PPG § 3.B.

64.     None of the preconditions set out in the PPG have ever been met with respect to plaintiffs. Neither plaintiff was ever an eligible target for lethal action, nor has either ever posed a threat to the United States.

65.     None of the defendants has given plaintiffs notice of their inclusion on the Kill

List or an opportunity to challenge that inclusion. No defendant has any established administrative process for any individual to challenge his or her inclusion on the Kill List.

66. The inclusion of plaintiffs Zaidan and Kareem on the Kill List constitutes unlawful agency action subject to declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, for the following reasons:

a. It is arbitrary and capricious and an abuse of discretion because neither plaintiff is a terrorist nor an enemy of the United States and neither has taken any action against the United States;

b. It is arbitrary and capricious agency action and an abuse of discretion because both plaintiffs are journalists and the targeting of journalists is a violation of the First Amendment;

c. It is arbitrary and capricious agency action and an abuse of discretion because 1) the agencies responsible for overseeing drone attacks did not meet the necessary preconditions before targeting plaintiffs; 2) plaintiffs are not and never have been lawful targets of lethal action; 3) plaintiffs had no opportunity, and defendants provide no opportunity, to challenge their inclusion on the Kill List and thus their administrative and constitutional rights to due process under the Fifth Amendment to the Constitution have been violated.

d. Because both are civilian journalists not involved in any hostilities against the United States, it violates (i) 18 U.S.C. § 956(a)(1), which prohibits conspiracy to commit murder or maiming outside the United States; (ii) 18 U.S.C. § 2441(c)(3) and (d)(1)(D), which prohibit the war crimes of conspiracy to murder and attempted murder of a civilian who has taken no active part in the hostilities; (iii)

Executive Order 12,333, which prohibits U.S. government employees from engaging in or conspiring to engage in assassination; (iv) international law, explicitly recognized by the President and the PPG, that "non-combatants . . . may not be made the object of attack."[1]

e.   It violates the War Powers Resolution—which restricts the use of United States Armed Forces in hostilities absent congressional authorization—because it is not within the scope of the 2001 Authorization for Use of Military Force, 115 Stat. 224, 224 (codified at 50 U.S.C. § 1541 note) (2001).  Plaintiffs are civilians who neither participated in, nor harbored anyone who participated in, the attacks of September 11, 2011.  The targeting of both violates executive policy standards and procedures for the use of force in counterterrorism efforts.

f.   It violates the First, Fourth and Fifth Amendments to the Constitution;

g.   Because both Zaidan and Kareem are innocent civilians, it violates the International Covenant on Civil and Political Rights as an attempt to deprive them of life arbitrarily and without cause.

h.   The actions against them do not conform to the PPG.  Neither is any threat, let alone a "continuing imminent" threat, and the strikes were not conducted with "[n]ear certainty that non-combatants will not be injured or killed" within the meaning of the PPG.  To the extent that these standards set forth in the PPG are no longer operative, then the program is in violation of international law, domestic law and the United States Constitution.

---

[1] *See,* Fact Sheet:  U.S. Policy Standards and Procedures for the Use of Force in Counterterrorism Operations Outside the United States and Areas of Active Hostilities, May 23, 2013, https://obamawhitehouse.archives.gov/the-press-office/2013/05/23/fact-sheet-us-policy-standards-and-procedures-use-force-counterterrorism.

## FIRST CLAIM FOR RELIEF

### (Violation of Administrative Procedure Act –
### Agency Action that Is Arbitrary and Capricious, and an Abuse of Discretion)

67. Plaintiffs re-allege and incorporate by reference each and every factual allegation set forth above as if set forth fully herein.

68. Neither Zaidan nor Kareem poses a continuing, imminent threat to U.S. persons or national security.

69. Neither Zaidan nor Kareem is a member or supporter of any terrorist group.

70. Inclusion of Zaidan and Kareem on the Kill List under these circumstance was arbitrary and capricious, and an abuse of discretion.

## SECOND CLAIM FOR RELIEF

### (Violation of Administrative Procedure Act –
### Agency Action that Is Not in Accordance with Law)

71. Plaintiffs re-allege and incorporate by reference each and every factual allegation set forth above as if set forth fully herein.

72. Under the circumstances alleged in this Complaint, including Zaidan and Kareem on the Kill List is not in accordance with applicable law.

73. Inclusion of Zaidan and Kareem on the Kill List violates the prohibition on conspiring to or assassinating any person abroad contained in Executive Order 12,333.

74. Inclusion of Zaidan and Kareem on the Kill List violates the prohibition against war crimes contained in 18 U.S.C. § 2441 because it constitutes a grave breach of common article 3 of the Geneva Conventions as specified in 18 U.S.C. § 2441 (c)(3) – in particular conspiracy and attempt to commit murder or cause serious bodily injury as defined by 18 U.S.C. § 2441 (d)(1)(D), and (d)(1)(F).

75.     Inclusion of Zaidan and Kareem on the Kill List violates Article 6 of the International Covenant on Civil and Political Rights (ICCPR), March 23, 1976, 999 U.N.T.S. 171, as ratified by Congress on April 2, 1992, because it seeks to arbitrarily deprive them of their inherent right to life.

76.     Inclusion of Zaidan and Kareem on the Kill List violates 18 U.S.C. § 956(a)(1), which prohibits conspiracy to commit murder or maiming outside the United States.

### THIRD CLAIM FOR RELIEF

**(Violation of Administrative Procedure Act –
Agency Action that Is in Excess of Statutory Authority)**

77.     Plaintiffs re-allege and incorporate by reference each and every factual allegation set forth above as if set forth fully herein.

78.     The inclusion of plaintiffs on the Kill List violates the APA because it exceeds the authority given to the Executive pursuant to the Authorization for the Use of Military Force, ("AUMF"), 115 Stat. 224, 224 (codified at 50 U.S.C. § 1541 note) (2001).

79.     The AUMF permits the use of military force only "against those nations, organizations, or persons" determined by the president to have "planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons."

80.     Neither Zaidan nor Kareem "planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons."

## FOURTH CLAIM FOR RELIEF

### (Violation of Administrative Procedure Act –
### Denial of Process and the Opportunity to be Heard)

81.    Plaintiffs re-allege and incorporate by reference each and every factual allegation set forth above as if set forth fully herein.

82.    Zaidan and Kareem were given no notice of their inclusion on the Kill List.

83.    Zaidan and Kareem were given no opportunity to challenge their inclusion on the Kill List or to provide evidence on their own behalf or to otherwise participate in the process by which their names were included on the Kill List.

## FIFTH CLAIM FOR RELIEF

### (Violation of Administrative Procedure Act –
### Agency Action Depriving First Amendment Constitutional Rights)

84.    Plaintiffs re-allege and incorporate by reference each and every factual allegation set forth above as if set forth fully herein.

85.    The inclusion of Zaidan and Kareem on the Kill List violates the First Amendment to the United States Constitution because it has the effect of restricting and inhibiting their exercise of free speech and their ability to function as journalists entitled to freedom of the press.

86.    Plaintiffs' inclusion on the Kill List is a direct result of their activities arising out of and necessary to their work as journalists covering the conflict in Syria, the War on Terror, and other matters.

87.    The inclusion of plaintiffs on the Kill List has substantially restricted, if not eliminated, their ability to conduct effective journalism regarding the Syrian conflict and the War on Terror.

88.     In addition to the direct impact on their individual activity, these restrictions have deprived U.S. citizens and residents, as well as persons worldwide, of important information and viewpoints about the conflicts in Syria and Pakistan and the War on Terror, interfering with their ability to participate effectively in the ongoing political debate regarding these matters.

## SIXTH CLAIM FOR RELIEF

### (Violation of Administrative Procedure Act – Agency Action Depriving Fourth and Fifth Amendment Constitutional Rights)

89.     Plaintiffs re-allege and incorporate by reference each and every factual allegation set forth above as if set forth fully herein.

90.     The inclusion of Kareem on the Kill List violates the Fourth Amendment to the United States Constitution because it constitutes an illegal seizure.

91.     The inclusion of Kareem on the Kill List violates the Fifth Amendment to the United States Constitution because it seeks to deprive him of life without due process of law.

92.     Kareem is a U.S. citizen possessed of full constitutional rights.

93.     By placing him on the Kill List, defendants have unlawfully seized him and are seeking to deprive him of life without providing him an opportunity to be heard or present evidence demonstrating that he does not pose a threat to U.S. persons or interests.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Zaidan and Kareem respectfully request that the Court:

- Declare that the inclusion of plaintiffs Zaidan and Kareem on the Kill List is the result of arbitrary and capricious agency action and/or is unlawful and/or is unconstitutional.

- Issue an injunction prohibiting the inclusion of plaintiffs Zaidan and Kareem on the Kill List unless and until defendants establish, and plaintiffs are given the

opportunity to challenge their inclusion on the Kill List in, a process that comports with standard elements of due process including notice, access to evidence against them, and a right to be heard.

- Issue an injunction requiring that defendants:

    i.   remove plaintiffs Zaidan and Kareem from any and all lists of persons to be targeted for drone strikes or other unlawful killing; and/or

    ii.  cease conducting lethal strikes that target plaintiffs Zaidan and Kareem; and/or

    iii. adhere to Executive Order 12,333, § 2.11, Executive Order, the "U.S. Policy Standards and Procedures for the Use of Force in Counterterrorism Operations Outside the United States and Areas of Active Hostilities," and Executive Order 13,732, "United States Policy on Pre- and Post-Strike Measures to Address Civilian Casualties in U.S. Operations Involving the Use of Force," whenever lawfully conducting drone strikes.

- Award such other relief as the Court may deem just and proper.

Dated this 30th day of March, 2017

/s/ Jeffrey D. Robinson_____
Jeffrey D. Robinson (D.C. Bar #376037)
Tara J. Plochocki (D.C. Bar #989404)
LEWIS BAACH PLLC
1899 Pennsylvania Ave. NW,
Suite 600
Washington, D.C.  20006
202-833-8900
jeffrey.robinson@lewisbaach.com
tara.plochocki@lewisbaach.com

Jennifer Gibson (Cal. Bar #288516)
Reprieve
P.O. Box 72054
London EC3P 3BZ
+44 (0)207 553 8152

*Attorneys for Plaintiffs Ahmad Zaidan and Bilal Abdul Kareem*