**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AHMAD MUAFFAQ ZAIDAN, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 17-00581 (RMC) |
| DONALD J. TRUMP<br>President of the United States, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director
Federal Programs Branch

STEPHEN M. ELLIOTT
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7318
Washington, D.C. 20530
Tel: (202) 305-8177
Email: stephen.elliott@usdoj.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ........................................................................................................ 3

I. The Case Should be Dismissed for Lack of Subject Matter Jurisdiction because Plaintiffs Lack Constitutional Standing ........................................................................ 3

A. Plaintiff Zaidan Has Not Established Constitutional Standing ........................................ 5

B. Plaintiff Kareem Also Has Not Established Constitutional Standing ........................ 7

II. Plaintiffs Fail to State a Claim upon Which Relief Can Be Granted ........................ 11

III. Plaintiffs' Claims Present Non-Justiciable Political Questions ........................................ 13

CONCLUSION ........................................................................................................ 16

**TABLE OF AUTHORITIES**

**Cases**

*Al-Aulaqi v. Obama*,
727 F. Supp. 2d 1 (D.D.C. 2010) .................... 14, 15, 16

*Al-Aulaqi v. Panetta*,
35 F. Supp. 3d 56 (D.D.C 2014) .................... 15

*Alfred A. Knopf, Inc. v. Colby*,
509 F.2d 1362 (4th Cir. 1975).................... 6

*Al-Haramain Islamic Found., Inc. v. Dep't of Treasury*,
686 F.3d 965 (9th Cir. 2012).................... 7

*Allen v. Wright*,
468 U.S. 737 (1984) .................... 4

*Anderson v. Carter*,
802 F.3d 4 (D.C. Cir. 2015) .................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 11

*Bazzi v. Lynch*,
No. 16-10123, 2016 WL 4525240 (E.D. Mich. Aug. 30, 2016) .................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................... 11, 13

*Beydoun v. Lynch*,
No. 14-13812, 2016 WL 3753561 (E.D. Mich. July 14, 2016) .................... 7

*Burford v. Yellen*,
--- F. Supp. 3d ---- , 2017 WL 1214398 (D.D.C. March 31, 2017) .................... 11

*Clapper v. Amnesty Int'l U.S.A.*,
133 S. Ct. 1138 (2013) .................... 5, 6, 8

*Clinton v. Jones*,
520 U.S. 681 (1997) .................... 12

*El-Shifa Pharm. Indus. v. United States*,
607 F.3d 836 (D.C. Cir. 2010) .................... 14, 15

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) .......... 12, 13

*Global Relief Found., Inc. v. O'Neill*,
315 F.3d 748 (7th Cir. 2002) .......... 7

*Holy Land Found. For Relief & Dev. v. Ashcroft*,
219 F. Supp. 2d 57 (D.D.C. 2002) .......... 7

*Japan Whaling Ass'n v. Am. Cetacean Soc.*,
478 U.S. 221 (1986) .......... 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 3

*Latif v. Holder*,
686 F.3d 1122 (9th Cir. 2012) .......... 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 4, 5, 7

*Mississippi v. Johnson*,
71 U.S. 475 (1866) .......... 12

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005) .......... 14, 15

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007) .......... 4

*Speelman v. United States*,
461 F. Supp. 2d 71 (D.D.C. 2006) .......... 8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 4

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) .......... 12

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 4

*Welborn v. Internal Revenue Serv.*,
218 F. Supp. 3d 64 (D.D.C. 2016) .......... *passim*

**Statutes**

5 U.S.C. § 701(a)(2)........................................................................................................... 13

5 U.S.C. § 701(b)(1)(G)...................................................................................................... 13

10 U.S.C. § 113(b)............................................................................................................. 12

# **INTRODUCTION**

Plaintiffs Ahmad Muaffaq Zaidan and Bilal Abdul Kareem ("Plaintiffs"), who both state they are journalists working abroad, allege that Defendants have violated the Administrative Procedure Act by purportedly placing them on a "Kill List." Plaintiffs base their claims on pure conjecture, theorizing that an implausible chain of possibilities, if all assumed to be true, show that the U.S. Government has approved lethal action against them. Plaintiffs have not presented any factual support for their allegations, and simply ask the Court to infer that the farfetched theory they propound establishes constitutional standing and plausible claims for relief. As set forth below, this Court should dismiss the instant action for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.

To begin, the Court lacks subject matter jurisdiction because Plaintiffs have not alleged sufficient facts to establish that they have standing to bring their lawsuit. Plaintiffs provide no plausible factual support for their speculative assertion that the U.S. Government placed their names on a "Kill List" and has authorized lethal action against them. Plaintiff Zaidan contends that a document found on the internet identifies him as a terrorist. Putting aside the authenticity of the alleged online document—which has not been established—nothing in this allegation remotely indicates that the United States is targeting Plaintiff for lethal force. Nor does Plaintiff offer any support for the notion that a purported association with terrorism necessarily means an individual would be so targeted. Indeed, the United States takes well-documented, measured steps to deal with individuals and entities it believes may be associated with terrorism, such as economic sanction designations and screening to protect commercial aviation. Plaintiff Kareem, for his part, posits that because he has experienced explosions on or near the battlefield in Syria while reporting, the U.S. Government necessarily must be targeting him for lethal action and will

do so again in the future. Plaintiff Kareem has not established that his bald speculation has any basis in fact, let alone shown that similar experiences in the future would be attributable to the U.S. Government. For these reasons, as further addressed below, Plaintiffs lack constitutional standing and the case must be dismissed.

For similar reasons, Plaintiffs have not pled sufficient facts to establish that the alleged unlawful actions have even occurred, and therefore, have not plausibly stated claims upon which relief can be granted. As such, the Court should alternatively dismiss the case for failure to state a claim.

Finally, and without crediting Plaintiffs' allegation as having any degree of plausibility, the law is clear that decisions concerning the exercise of lethal force outside the United States would not be appropriate questions for judicial resolution in any event. To examine such matters, the Court would be required to probe into sensitive and complex national security decisions concerning the circumstances in which an individual or entity might be subject to the use of lethal force overseas and, if so, why. There is no basis for the Court to reach such political questions in this case.

## BACKGROUND

Plaintiff Zaidan, a Syrian and Pakistani citizen, alleges that he is a "well-respected journalist" erroneously identified as a member of the Muslim Brotherhood and a courier for al-Qaeda by "a U.S. intelligence document published online, entitled 'SKYNET[.]'" Compl. ¶¶ 25, 33. Plaintiff asserts that the SKYNET program uses "metadata" to "identify potential terrorists[.]" *Id.* at ¶ 33. Plaintiff claims that as a consequence of this misidentification, the U.S. Government has placed him on a "Kill List" and "targeted [him] for lethal action[.]" *Id.* at ¶¶ 24, 35. Plaintiff Kareem, a U.S. citizen, alleges that he is a journalist reporting from inside Syria

about the ongoing civil war. *Id.* at ¶¶ 40, 45. Plaintiff Kareem claims that he too is on a "Kill List," evidenced by the fact that he "has narrowly missed being hit by military strikes [in Syria] on a number of separate occasions." *Id.* at ¶¶ 46, 52. In particular, Plaintiff Kareem alleges that five times over the past year an explosion has occurred in close proximity to him or his vehicle. *Id.* at ¶¶ 47–51.

The Complaint consists of six claims, all of which allege that Plaintiffs have been placed on the so-called "Kill List" in violation of the APA. *See* Compl. ¶¶ 67–93. The first, second, and third claims allege that the Government's decisions to place Plaintiffs on the "Kill List" were arbitrary and capricious, not in accordance with the law, and in excess of statutory authority. *Id.* at ¶¶ 67–80. The fourth and fifth claims assert that the purported placements deprived Plaintiffs of a process and opportunity to be heard in violation of the APA, and inhibited their exercise of free speech and freedom of the press under the First Amendment. *Id.* at ¶¶ 81–88. In the sixth claim, Plaintiff Kareem alleges that the Government seeks to deprive him of life without due process of law and its actions amount to an unlawful seizure in violation of the Fifth and Fourth Amendments respectively. *Id.* at ¶¶ 89–93. For the reasons addressed below, all of Plaintiffs' claims should be dismissed.

## ARGUMENT

### I. The Case Should be Dismissed for Lack of Subject Matter Jurisdiction because Plaintiffs Lack Constitutional Standing

The federal courts "are courts of limited jurisdiction," and it will be "presumed that a cause lies outside" the limited parameters of their authority. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Plaintiffs seeking to invoke the jurisdiction of a federal court bear the burden of establishing that the court's exercise of jurisdiction falls within the bounds of the Constitution. *Id.* When defendants raise an issue of subject matter

jurisdiction, the Court must resolve the jurisdictional issue before it proceeds to the merits of the plaintiffs' claims. *See, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)[.]" (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)).

The constitutional separation of powers, as embodied in Article III of the Constitution, restricts the subject matter jurisdiction of the federal courts to the resolution of specific "'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). One manifestation of the "case or controversy" limitation is the requirement of "standing," which demands that the plaintiffs in federal court show "such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that a litigant's standing to sue is "an essential and unchanging part of the case-or-controversy requirement"). The "irreducible constitutional minimum" of standing to sue requires the plaintiffs to allege: (1) an "injury in fact," that is (2) "fairly traceable" to the challenged conduct, and (3) likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61; *accord Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 76 (D.D.C. 2016). The plaintiffs bear the burden of establishing each of the three elements. *See Lujan*, 504 U.S. at 561.

The plaintiffs' burden of establishing standing differs depending on the stage of litigation at which the issue is raised. *See Lujan*, 504 U.S. at 561. General factual allegations may suffice at the pleading stage to establish standing, while standing gets increasingly harder to demonstrate as the litigation progresses through the summary judgment phase and trial. *Id.* But even at the

earliest stage of litigation, a case should be dismissed if the plaintiffs fail to establish standing based on the pleadings before the district court. *Id.*

**A. Plaintiff Zaidan Has Not Established Constitutional Standing**

Plaintiff Zaidan has the burden of alleging sufficient facts to establish an "injury in fact," which must be "concrete and particularized" and "actual or imminent not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. This requirement seeks to make certain that the "alleged injury is not too speculative for Article III purposes[.]" *Clapper v. Amnesty Int'l U.S.A.*, 133 S. Ct. 1138, 1147 (2013). "Allegations of speculative or possible future injury do not satisfy the requirements of Article III." *Welborn*, 218 F. Supp. 3d at 76.

Plaintiff Zaidan has not met the "injury in fact" prerequisite for constitutional standing. *See* Compl. ¶¶ 20–39. Plaintiff asserts that his alleged inclusion on the "Kill List" makes him open to targeting once the opportunity presents itself in the future. *Id.* But Plaintiff has not plausibly alleged in the first instance that he has been placed on a "Kill List" or that he faces an imminent threat of future injury. *See Clapper*, 133 S. Ct. at 1149 n.4 (remarking that it is Plaintiffs' "burden to prove their standing by pointing to specific facts . . . not the Government's burden to disprove standing"). Indeed, Plaintiff's theory of standing rests on sheer speculation and a highly attenuated chain of possibilities. *Id.* at 1148.

Plaintiff Zaidan's own description of the alleged SKYNET program does not support his theory of constitutional standing. *See* Compl. ¶¶ 35, 60. At its core, Plaintiff alleges that the SKYNET program identifies "potential terrorists" based on "electronic patterns of their communications, writings, social media postings, and travel." *Id.* at ¶ 33. Based on this description of the purported program, Plaintiff speculates that because he was identified by the

program as a "potential terrorist," he has also been nominated and approved for lethal action. *Id.* at ¶ 35.

But these allegations of injury are purely conjectural, and do not set forth any plausible facts that the Defendants have targeted him for lethal force. *See* Compl. ¶ 35. Plaintiff Zaidan speculates not only that the alleged document is authentic and the program it purports to describe actually exists,[1] but that he is personally being targeted for lethal force because Plaintiff allegedly interacted with and interviewed extremists. *See, e.g., id.* ¶ 34 ("SKYNET *may* target persons solely because they frequently interact with so-called 'militants[.]'") (emphasis added). Such unsupported speculation hardly results in a "plausible inference" that Plaintiff faces any harm, let alone "imminent harm that is 'certainly impending.'" *Welborn*, 218 F. Supp. 3d at 77; *see also Clapper*, 133 S. Ct. at 1148 (rejecting the plaintiffs' standing claims when they speculated that their "communications *may* be subject to government surveillance") (emphasis in original). More specifically, Plaintiff merely engages in conjecture, but does not set forth any facts that plausibly show, that the Government uses the alleged SKYNET program to identify targets for lethal action, that it then nominated Plaintiff to be included on a "Kill List" after he was purportedly identified by the SKYNET program, and thus that it is actively trying to target Plaintiff for lethal action. *See* Compl. ¶¶ 33–35, 55–63.

Indeed, even assuming the truth of Plaintiff's allegation that the alleged SKYNET program identifies "potential terrorists" based on "electronic patterns of their communications,

[1] Plaintiff notes the so-called SKYNET document is published online. *See* Compl. ¶ 33. To the extent the document purports to be a classified Government document, Defendants cannot confirm or deny its authenticity or contents, and it should not be at issue, cited, or otherwise used in this case. *See Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975) (holding that purportedly leaked national security information "was not in the public domain unless there had been official disclosure of it").

writings, social media postings, and travel," *id.* at ¶ 33, it remains wholly unsupported that "potential terrorists"—as Plaintiff alleges he has been judged—are nominated and approved for lethal action. *Id.* at ¶ 35. For Plaintiff's logic to hold, the Court would have to presume that every individual that the U.S. Government identifies as a "potential terrorist" has also been approved for lethal action. In fact, it is well established that the Government undertakes other non-lethal measures against known or suspected terrorists, including through economic sanctions or other watchlisting measures, such as aviation screening and No Fly List determinations.[2] Thus, even accepting Plaintiff's speculation that the Government regards him as a "potential terrorist," the notion that as a result he has been included on a "Kill List" and will be targeted for lethal force in the future is entirely speculative and unfounded and, therefore, does not establish an injury-in-fact for purposes of constitutional standing.

### B. Plaintiff Kareem Also Has Not Established Constitutional Standing

Plaintiff Kareem's allegations also fail to establish constitutional standing for equally compelling reasons. *See* Compl. ¶¶ 40–54. To the extent Plaintiff Kareem's claims mimic those raised by Plaintiff Zaidan, he has similarly failed to demonstrate that he faces a non-speculative "injury-in-fact" or any threat of imminent future injury. *See Lujan*, 504 U.S. at 560–61. And to

[2] *See, e.g.*, *Holy Land Found. For Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 77 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003) (involving entity designated as "Specially Designated Global Terrorist" whose assets were blocked pursuant to International Emergency Economic Powers Act); *Al-Haramain Islamic Found., Inc. v. Dep't of Treasury*, 686 F.3d 965, 974–75 (9th Cir. 2012) (same); *Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) (same); *Latif v. Holder*, 686 F.3d 1122, 1125 (9th Cir. 2012) (involving U.S. citizens denied boarding commercial airplanes based on purported inclusion in the Terrorist Screening Database and the No Fly List); *Beydoun v. Lynch*, No. 14-13812, 2016 WL 3753561 (E.D. Mich. July 14, 2016) (involving U.S. citizen subjected to enhanced security screening prior to boarding commercial airplane based on alleged inclusion in the Terrorist Screening Database and the Selectee List); *Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240 (E.D. Mich. Aug. 30, 2016) (same).

the extent Plaintiff Kareem relies on past circumstances he faced while on battlegrounds in Syria, this also fails to plausibly allege that the dangers he experienced were the result of being placed on any so-called "Kill List," let alone that he faces any imminent threat of future lethal force by the U.S. Government. As discussed further below, the Court should dismiss the case with regard to Plaintiff Kareem for lack of standing.

Plaintiff Kareem asserts that the U.S. Government has placed him on a "Kill List," and as a consequence, that he has established an "injury-in-fact" and that he faces imminent death that is "certainly impending." Compl. ¶ 52; *see Clapper*, 133 S. Ct. at 1147. Plaintiff, however, provides absolutely no evidence to support his bald conjecture that the U.S. Government has approved him for lethal action. *See* Compl. ¶ 52. Instead, Plaintiff recounts five instances in which he has been wounded or narrowly escaped injury on battlefields in Syria, and he asks the Court to simply *infer* that the U.S. Government was purposely attempting to kill him. *Id.* at ¶¶ 46–51. But "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint." *Welborn*, 218 F. Supp. 3d at 72–73 (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

Here, Plaintiff Kareem has not plausibly shown that any prior danger he has faced in Syria, or any threat of similar future injury, is attributable to any actions undertaken by the U.S. Government to target him for lethal force. Plaintiff's basis for his speculative claim arises from five purported incidents over the past year in which he has sustained or narrowly escaped war-related injuries. *See, e.g.*, Compl. ¶ 51 (stating that he and others were "picking glass and steel out of their skin" after a "huge blast"). Assuming that these factual allegations about what happened to him in Syria are taken as true, Plaintiff has not established that they can be attributable to anything more than a journalist reporting from a dangerous and active battlefield.

*Id.* Indeed, Plaintiff's own allegations illustrate the chaotic and volatile landscape in which he has chosen to work as a correspondent. For example, Plaintiff alleges that he "has narrowly missed being hit by military strikes on a number of occasions" when "covering anti-Assad rebels," which suggests that Syrian government forces were responsible for the attacks. *Id.* at ¶ 46. Plaintiff similarly alleges that he barely escaped an explosion in an area that recently fell under rebel control, again suggesting that the near miss was attributable to Syrian government forces and the ongoing hostilities, but not in any way indicating that this resulted from direct targeting by the United States. *Id.* at ¶ 51. In sum, Plaintiff's allegations, although graphic, do nothing more than describe a firsthand account of the dangerous realities of the ongoing Syrian civil war. *See Welborn*, 218 F. Supp. 3d at 72–73 (explaining that when considering subject matter jurisdiction the district court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint").

Independent sources address the volatile and complex geopolitical realities in Syria. *See Welborn*, 218 F. Supp. 3d at 73 (observing that a "court may consider materials outside the pleadings to determine its jurisdiction"). The Syrian civil war involves numerous groups and factions pitted against one another, including the Syrian government and its allies, anti-Assad opposition groups, Kurdish factions, and terrorist organizations, such as the Islamic State and al-Qaeda-linked fighters. *See* Congressional Research Service, Armed Conflict in Syria: Overview and U.S. Response (April 26, 2017), at 8–11, *available at* http://https://www.hsdl.org/?view&did=800762. Foreign allies of the Syrian government include Hezbollah, foreign Shia militias, and Iranian forces. *Id.* at 11. Foreign governments, including the United States, Turkey, and Russia have provided direct military assistance to one side or another. *Id.* at 8–11. Put simply, the various warring factions and the volatile and ever-changing battlefield makes

Plaintiff's allegation that he has been targeted specifically by the U.S. Government all the more implausible.

In addition, Syria has been described as the most dangerous place in the world for journalists. *See* U.S. Dep't of State, Syria 2016 Human Rights Report, at 29, *available at* https://www.state.gov/documents/organization/265732.pdf. The 2016 Human Rights Report recounted incidents of the Syrian government and extremist groups abducting and detaining journalists. *Id.* at 2, 4, 5, 13, 19, 22, 29, 31. Even more troubling, the Report documented the routine targeting and killing of local and foreign journalists by the Syrian government and the Islamic State. *Id.* at 29. For example, the Islamic State—also known as "Da'esh"—has conducted public executions of foreign journalists. *Id.* at 3. In 2016 alone, the Report states that independent sources documented three journalists killed in Syria. *Id.* at 29. Thus, all journalists in Syria, not just Plaintiff Kareem, are under constant threat of harm from the Syrian government and extremist groups, again underscoring the implausibility of Plaintiff's allegations raised against Defendants.

In these circumstances, Plaintiff Kareem engages in sheer unsupported and implausible speculation that the encounters he has had, including being present in the midst of attacks by purported "drones," *see* Compl. ¶¶ 48–49, somehow shows that he is personally being targeted with lethal force by the United States. With regard to one purported incident in Hariyataan, Plaintiff asserts that he saw "drones buzzing above" and an explosion occurred. *Id.* at ¶ 48. Plaintiff similarly alleges that he witnessed a drone "circling" his position in Khantounam and his vehicle subsequently exploded. *Id.* at ¶ 49. Again, even assuming that Plaintiff in fact witnessed a drone in his vicinity, these allegations do not plausibly establish that Plaintiff was the intended target, let alone that the United States conducted the alleged strike, and that it did so

specifically to target Plaintiff Kareem. Simply put, Plaintiff Kareem has failed to show that his alleged injury—being exposed to lethal force repeatedly on battlefields in Syria—is the result of action directed against him by the United States as opposed to the independent actions of third parties. *Welborn*, 218 F. Supp. 3d at 78 (no standing where the alleged injury is "the result of the independent action of some third party not before the court."). Accordingly, Plaintiff Kareem's allegations that he has been included on a "Kill List" by the United States or that he faces an imminent threat of future injury thus constitute no more than unsupported speculation and do not establish the requisite constitutional standing at the pleading stage.

## II. Plaintiffs Fail to State a Claim upon Which Relief Can Be Granted

For much the same reason that the Court could find that Plaintiffs have failed to establish their standing, it may also find that they have failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must contain: (1) "enough facts to state a claim to relief that is plausible on its face," (2) more than "labels and conclusions" or "a formulaic recitation of a cause of action's elements," and (3) allegations that suggest "a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555, 570 (2007); *accord Burford v. Yellen*, --- F. Supp. 3d ---- , 2017 WL 1214398, at *6 (D.D.C. March 31, 2017). This plausibility showing "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, Plaintiffs' claims, as alleged in the Complaint, are simply not plausible.[3]

[3] Plaintiffs seek injunctive and declaratory relief from the President and senior members of the national security apparatus named in this case. *See* Compl. ¶¶ 5–15 & pp. 21–22. But Article III courts, "in general," should refrain from directing the President to take any official presidential

Plaintiff Zaidan's various claims challenge his alleged placement on a "Kill List," all of which are implausible and based purely on conjecture. *See* Compl. ¶¶ 67–88. Plaintiff contends that he must be a on the "Kill List" because the SKYNET document identified him as a "potential terrorist." *Id.* at ¶ 35. But Plaintiff does not allege that the SKYNET document itself indicates that the U.S. Government approved lethal action against Plaintiff. *Id.* at ¶¶ 33–34. Rather, Plaintiff merely speculates, without any factual support, that because he has purportedly been identified by the SKYNET program as a "potential terrorist," he is necessarily on a "Kill List." *Id.* ¶¶ 33–35. Even assuming that the SKYNET document exists and is authentic, Plaintiff has conjured a highly unlikely possibility that he has been placed on a "Kill List" because of his identification as a "potential terrorist." Such speculative allegations do not state a claim for relief that is plausible on its face.

Likewise, Plaintiff Kareem's bald speculation that the U.S. Government placed him on a "Kill List" does not present plausible claims for relief. *See* Compl. ¶¶ 40–54, 67–93. Indeed, Plaintiff's claims are simply not plausible on their face because they are all grounded on a highly

---

act or not to take any such action. *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (plurality opinion) (quoting *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866)); *see also Clinton v. Jones*, 520 U.S. 681, 719 (1997) (Breyer, J., concurring) (acknowledging "the apparently unbroken historical tradition . . . implicit in the separation of powers that a President may not be ordered by the Judiciary to perform particular Executive acts") (quoting *Franklin*, 505 U.S. at 827); *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) (noting that the Supreme Court has issued a "stern admonition" that injunctive relief against the President personally is an "extraordinary measure"). The Court should likewise decline to impose injunctive or declaratory relief against the other defendants, all of whom are cabinet level officials or senior advisers in the President's national security apparatus. *See Mississippi*, 71 U.S. at 499 (denying a request to enjoin the President and the military commander assigned to the State of Mississippi from executing and carrying out the post-Civil War Reconstruction Acts). Any injunction against the President's principal national security advisers would necessarily implicate the President's own authority in directing the use of force. *See, e.g.*, 10 U.S.C. § 113(b) (describing the Secretary of Defense as "the principal assistant to the President in all matters relating to the Department of Defense" and his authority is expressly "[s]ubject to the direction of the President").

speculative and totally unsupported factual underpinning. *Id.* at ¶ 52. Plaintiff purports that he *must* be on a "Kill List" because five times in the past year he has been injured or narrowly escaped injury from battlefield explosions in Syria. *Id.* at ¶¶ 47–51. Plaintiff's theory is wholly implausible because, as addressed above, Syria is an active war zone with numerous warring factions vying for influence and terrain. *See* Section I.B, *supra*. Plaintiff himself puts forth a far more plausible explanation for the five incidents: he has chosen to work as a journalist on the front lines of a volatile and deadly civil war. Plaintiff's claims simply are not supported by any plausible facts to propel them beyond the level of sheer speculation.[4] *See Twombly*, 550 U.S. at 555–56.

## III. Plaintiffs' Claims Present Non-Justiciable Political Questions

Although nothing more is needed to dispose of Plaintiffs' claims, it is worth noting in addition that courts have recognized that claims such as those at issue here, which challenge the President's authority and discretion to use lethal military force against targets outside the United States, present non-justiciable political questions. The Court need not reach this weighty issue for the reasons noted above, but it nonetheless is implicated by the claims. Even if Plaintiffs could establish standing and could state a factually plausible claim, exploring whether or not

---

[4] Even if the implausible allegations raised are accepted as true at this stage, the APA does not afford a remedy in this case. First, the APA expressly excludes from its reach "military authority exercised in the field in the time of war or in occupied territory." 5 U.S.C. § 701(b)(1)(G). Thus, to the extent the claims seek to challenge the alleged use of lethal force in Syria by military commanders, such allegations would implicate the APA's military authority exception. *See Anderson v. Carter*, 802 F.3d 4, 8–9 (D.C. Cir. 2015), *cert. denied*, 137 S. Ct. 65 (2016). Second, the district courts lack jurisdiction to hear an APA claim where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As discussed herein, an alleged decision to use military force against a specific target is an action committed to the Executive's discretion. *See* Section III, *infra*. Third, the President "is not an agency within the meaning of the [APA]," and therefore, his actions are not subject to judicial review under the statute. *Franklin*, 505 U.S. at 796.

they had in fact been targeted for the use of lethal force overseas because of their purported terrorist activities would require probing into sensitive and complex national security decisions that are reserved to the Executive Branch. Here, Plaintiffs' claims ask the Court to evaluate a hypothetical national security decision that would be committed to the Executive Branch. *See* Compl. ¶¶ 67–93. Plaintiffs raise a series of challenges to the Government's purported decision to categorize them as terrorists and allegedly to target them for lethal action. *Id.* Although the Government can neither confirm nor deny the truth of Plaintiffs' allegations, such a theoretical decision would raise non-justiciable political questions.

There can be "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government." *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005). Moreover, the D.C. Circuit has specifically held that "whether the terrorist activity of foreign organizations constitutes threats to the United States" are policy determinations "held to belong in the domain of political power not subject to judicial intrusion or inquiry." *El-Shifa Pharm. Indus. v. United States*, 607 F.3d 836, 843 (D.C. Cir. 2010). In fact, the D.C. Circuit specifically concluded that the political question doctrine barred the court's review of the Executive's decision to conduct an overseas military strike. *Id.* at 843–44. The Executive's judgments on such national security matters fall outside of the district court's purview for good reason—"[t]he Judiciary is particularly ill suited to make such decisions, as courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature." *Id.* at 844 (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986)).

In an analogous case, another member of this court concluded that a similar claim was non-justiciable under the political question doctrine. *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1,

44–52 (D.D.C. 2010). Naser al-Aulaqi, the father of Anwar al-Aulaqi, claimed that the U.S. Government placed his son on a "kill list," subjecting him to "a standing order that permits the [U.S. Government] to kill him[.]" *Id.* at 11. The plaintiff sought, *inter alia*, injunctive relief prohibiting the Government from killing Anwar al-Aulaqi unless it met certain requirements. *Id.* at 12. The Court concluded that even if the plaintiff had standing, the claims presented by the lawsuit, like those in the instant case, would require the district court to consider political questions outside of its traditional area of expertise. *Id.* at 44–52. In doing so, the district court explained that determinations about whether to conduct a military strike abroad "are textually committed not to the Judiciary, but to the political branches." *Id.* at 50 (citing *Schneider*, 412 F.3d at 194–96). Further, the district court explained that there are "no judicially manageable standards by which courts can endeavor to assess" the President's decision to conduct a military operation overseas. *Id.* at 47 (citation omitted).

The instant lawsuit similarly asks the Court to examine whether Plaintiffs have been placed on a so-called "Kill List" for terrorism-related reasons and their purported targeting for lethal action.[5] *See* Compl. ¶¶ 67–93. Thus, any review of Plaintiffs' claims would require the Court to probe into sensitive and complex national security decisions concerning whether or not,

---

[5] After Anwar Al–Aulaqi was killed, his family brought a second lawsuit seeking monetary damages. *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56 (D.D.C 2014). This Court ultimately decided that the political question doctrine did not preclude its consideration of the case. *Id.* at 68–70. The Court acknowledged that its decision was "inconsistent" with the first *Al-Aulaqi* decision. *Id.* at 70 n.21. In doing so, the Court stated "the instant Complaint raises the [Fifth Amendment claim] more directly and acutely, asserting a claim for damages for the actual taking of Anwar Al–Aulaqi's life without regard to Fifth Amendment protections." *Id.* The Court also contrasted the D.C. Circuit's decision in *El-Shifa Pharm Indus.*, in which non-U.S. citizens attempted to sue the U.S. Government for "deprivation of a foreign property interest." *Id.* at 70. The instant case is more comparable to the first *Al-Aulaqi* decision and *El-Shifa Pharm Indus.*— Plaintiffs seek declaratory and injunctive relief for prospective injuries, *i.e.* they have not been the subject of lethal action, and only one of the plaintiffs is a U.S. citizen.

and in what circumstances, an individual or entity might be subject to the use of lethal force overseas and, if so, why. For the reasons set forth above, there is no basis for the Court to reach such political questions in this case. *See Al-Aulaqi*, 727 F. Supp. 2d at 44–52.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action in its entirety.

Dated: June 5, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director
Federal Programs Branch

*/s/ Stephen M. Elliott*
STEPHEN M. ELLIOTT
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 305-8177
Fax: (202) 616-8470
Email: stephen.elliott@usdoj.gov

*Counsel for Defendants*