IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
AHMAD MUAFFAQ ZAIDAN, et al.,               )
                                            )
    Plaintiffs,                             )
                                            )
v.                                          )   Civil Action No. 17-00581 (RMC)
                                            )
DONALD J. TRUMP                             )
President of the United States, et al.,     )
                                            )
    Defendants.                             )
_____)

# DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
# THEIR MOTION TO DISMISS

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director
Federal Programs Branch

STEPHEN M. ELLIOTT
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7318
Washington, D.C. 20530
Tel: (202) 305-8177
Email: stephen.elliott@usdoj.gov

*Counsel for Defendants*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT...........................................................................................................................2

    I.     The Case Should be Dismissed for Lack of Subject Matter Jurisdiction because Plaintiffs Lack Constitutional Standing ........................................................................2

    II.    Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted............................7

    III.   Plaintiffs' Claims Present Non-Justiciable Political Questions ..................................10

CONCLUSION......................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                                                                                                     **PAGE(S)**

*Al-Aulaqi v. Obama*,
   727 F. Supp. 2d 1 (D.D.C. 2010) ............................................................................... 6, 13, 14

*Al-Haramain Islamic Found., Inc. v. Dep't of Treasury*,
   686 F.3d 965 (9th Cir. 2012) ............................................................................................... 4

*Al Shimari v. CACI Premier Tech., Inc.*,
   840 F.3d 147 (4th Cir. 2016) ............................................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 8, 9

*Atlantic Urological Assocs., P.A. v. Leavitt*,
   549 F. Supp. 2d 20 (D.D.C. 2008) ....................................................................................... 2

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ............................................................................................................ 7

*Bazzi v. Lynch*,
   No. 16-10123, 2016 WL 4525240 (E.D. Mich. Aug. 30, 2016) ......................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 7

*Beydoun v. Lynch*,
   No. 14-13812, 2016 WL 3753561 (E.D. Mich. July 14, 2016) ......................................... 4

*Burford v. Yellen*,
   --- F. Supp. 3d ---- , 2017 WL 1214398 (D.D.C. March 31, 2017) ................................... 8

*Global Relief Found., Inc. v. O'Neill*,
   315 F.3d 748 (7th Cir. 2002) ............................................................................................... 4

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ................................................................................................................ 7

*Holy Land Found. For Relief & Dev. v. Ashcroft*,
   219 F. Supp. 2d 57 (D.D.C. 2002) ....................................................................................... 4

*Jaber v. United States*,
   --- F.3d --- , 2017 WL 2818645 (D.C. Cir. June 30, 2017) ....................................... *passim*

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ........................................................................................... 10

*Latif v. Holder*,
    686 F.3d 1122 (9th Cir. 2012) ............................................................................................. 4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................ 2

*Schneider v. Kissinger*,
    412 F.3d 190 (D.C. Cir. 2005) ........................................................................................... 10

*Sierra Club v. Jewell*,
    764 F.3d 1 (D.C. Cir. 2014) ................................................................................................. 7

*Speelman v. United States*,
    461 F. Supp. 2d 71 (D.D.C. 2006) .................................................................................... 3, 5

*Welborn v. Internal Revenue Serv.*,
    218 F. Supp. 3d 64 (D.D.C. 2016) ................................................................................ 2, 3, 5

*Wood ex. Rel. U.S. v. Am. Inst. in Taiwan*,
    286 F.3d 526 (D.C. Cir. 2002) .......................................................................................... 3, 6

*Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ..................................................................................................... 11, 12

## **INTRODUCTION**

Plaintiffs' opposition to Defendants' motion to dismiss ultimately rests on the proposition that the Court must simply "accept as true" their highly speculative factual allegations of injury—purportedly being place on a so-called "Kill List."  But this alleged injury is not remotely a reasonable inference to be drawn from the facts alleged in the Complaint, nor does it provide a plausible basis for any claim for relief in this case.

Plaintiff Zaidan asks the Court to infer that the Government's alleged labeling of him as an al-Qaeda terrorist supports the inference that he is being targeted for lethal action.  But that is hardly a reasonable inference to draw, given the different ways in which the Government may address the terrorist threat presented by any individual, and Zaidan sets forth no plausible allegations that he is in fact being targeted for death by the United States.  At bottom, he alleges that, if the Government has concluded that he is a senior al-Qaeda courier, it must also be targeting him for lethal action—but that is sheer, unsupported speculation.

Similarly, Plaintiff Kareem's allegation that he has been targeted for lethal force is based on his proximity to explosions as he has reported from a hostile military environment in Syria.  Even accepting as true his allegations in the Complaint, the more plausible explanation is that Plaintiff has chosen to work as a journalist in a country that has been overrun by warring factions and relentless violence.  The facts alleged in the Complaint, which are the only factual allegations before the Court, do not support Plaintiffs' sweeping assertions about their purported inclusion on a "Kill List."  Thus, neither Plaintiff Zaidan nor Kareem have put forth plausible allegations that support their standing to bring this lawsuit or to adequately state a claim for relief.

Moreover, without conceding that Plaintiffs' allegations have any plausibility, the D.C. Circuit has repeatedly held that the Executive's decision to approve a military strike in a foreign country presents non-justiciable political questions. Plaintiffs' arguments to the contrary have been squarely rejected by the D.C. Circuit, most recently in *Jaber v. United States*—a case Plaintiffs barely acknowledge. For this reason as well, the Court should dismiss Plaintiffs' claims for prospective relief pursuant to the political question doctrine.

## ARGUMENT

**I.   The Case Should be Dismissed for Lack of Subject Matter Jurisdiction because Plaintiffs Lack Constitutional Standing**

Plaintiffs' opposition to Defendants' motion to dismiss can be reduced to one core premise: unsupported speculation that they have been placed on a "Kill List" should be taken as true to establish constitutional standing at the pleading stage. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 14. But Plaintiffs bear the burden of plausibly establishing that their purported injury is "actual or imminent not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 76 (D.D.C. 2016) ("Allegations of speculative or possible future injury do not satisfy the requirements of Article III."); *Atlantic Urological Assocs., P.A. v. Leavitt*, 549 F. Supp. 2d 20, 26 (D.D.C. 2008) ("The injury alleged cannot be conjectural, hypothetical, remote, speculative or abstract; it must be certainly impending."). They have failed to do so.

As explained in Defendants' opening brief, Plaintiff Zaidan has not plausibly alleged his purported placement on a "Kill List." *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 5–7. Plaintiff alleges that the Government utilizes a program called SKYNET to identify "potential terrorists," Compl. ¶ 34, and then speculates that because he was purportedly identified by the program as a terrorist, he must have been nominated and approved for lethal

2

action. *Id.* at ¶ 35.  But Plaintiff does not set forth any facts that plausibly show that the Government uses the alleged SKYNET program to identify targets for lethal action, let alone that it nominated Plaintiff to be included on a "Kill List" pursuant to that program.  *See id.* ¶¶ 33–35, 55–63; *see also Welborn*, 218 F. Supp. 3d at 72–73 ("[T]he Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint.") (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  Such bald conjecture hardly results in a "plausible inference" that Plaintiff faces "imminent harm that is 'certainly impending.'"  *Welborn*, 218 F. Supp. 3d at 77.

In an attempt to bolster the plausibility of his claims, Plaintiff Zaidan, through counsel, seeks to provide additional factual details in the opposition brief that were not alleged in the Complaint.  *Compare* Pls.' Opp'n at 10, *with* Compl. ¶¶ 33–35.  For example, Plaintiff now alleges that the SKYNET program identified Plaintiff as "the highest scoring individual in Pakistan in a study of couriers for Al Qaeda Senior Leadership based on his travel patterns."[1] Pls.' Opp'n at 10.  "Statements by counsel, of course, are not evidence," and thus should be disregarded in the context of this motion to dismiss.  *Wood ex. Rel. U.S. v. Am. Inst. in Taiwan*, 286 F.3d 526, 534 (D.C. Cir. 2002).  But even if the Government had identified Plaintiff Zaidan as a prominent al-Qaeda courier, as Plaintiff now asserts, the Court would still be required to

---

[1] Plaintiffs fault the Government for "refus[ing] to comment on the document in which Zaidan was the highest scoring individual in metadata collection analyzing patterns of couriers for al Qaeda[.]" *Id.* at 12.  However, the Government cannot address a factual allegation that was absent from the Complaint.  *Compare* Pls.' Opp'n at 10, *with* Compl. ¶¶ 33–35.  Relatedly, Plaintiffs state that they forgot to cite to a document in the Complaint titled "SKYNET: Courier Detection via Machine Learning," which purportedly "describes how defendants have used SKYNET to detect couriers for Al Qaeda Senior Leadership (ASQL)." *See* Pls.' Opp'n at 3 & n.1.  To the extent this missing document was the source for the new factual allegation, it is unclear how the Government could address a document that Plaintiffs did not identify or discuss in the Complaint.

presume that the Government targets for lethal action every person that it identifies as an al-Qaeda terrorist or as associated with terrorists. *See* Pls.' Opp'n at 12.  As Defendants have explained, this inference is neither reasonable nor adequate to support a plausible claim.  The Government has a plethora of options when confronted with individuals or entities that are associated with terrorists.  One possibility, for example, includes the capture and prosecution of an alleged terrorist.  *See* Att'y Gen. Eric Holder, Speech at Northwestern Univ. School of Law (March 5, 2012), *available at* https://www.justice.gov/ opa/speech/attorney-general-eric-holder-speaks-northwestern-university-school-law ("Simply put, since 9/11, hundreds of individuals have been convicted of terrorism or terrorism-related offenses in Article III courts and are now serving long sentences in federal prison.").[2]  If circumstances do not warrant or allow for prosecution, economic sanctions could be levied on the individual or entity.  *See, e.g.*, *Holy Land Found. For Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 77 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003) (involving entity designated as "Specially Designated Global Terrorist" whose assets were blocked pursuant to International Emergency Economic Powers Act); *Al-Haramain Islamic Found., Inc. v. Dep't of Treasury*, 686 F.3d 965, 974–75 (9th Cir. 2012) (same); *Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) (same).  Another option entails placing an individual on terrorism watchlists and imposing aviation screening measures.  *See, e.g.*, *Latif v. Holder*, 686 F.3d 1122, 1125 (9th Cir. 2012) (involving U.S. citizens denied boarding commercial airplanes based on purported inclusion in the Terrorist Screening Database and the No Fly List); *Beydoun v. Lynch*, No. 14-13812, 2016 WL 3753561 (E.D. Mich. July 14, 2016) (involving U.S. citizen subjected to enhanced security screening prior to boarding

---

[2] *See also* Benjamin Weisner, Charlie Savage, Eric Schmitt, *Al Qaeda Suspect is Brought to New York for a Hearing*, N.Y Times, Oct. 14, 2013, *available at* http://www.nytimes.com/ 2013/10/15/us/libyan-terror-suspect-brought-to-new-york-for-trial.html.

commercial airplane based on alleged inclusion in the Terrorist Screening Database and the Selectee List); *Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240 (E.D. Mich. Aug. 30, 2016) (same). In sum, Plaintiff Zaidan's mere allegation that he has been identified as a terrorist is simply not sufficient at the pleading stage to establish that the Government has targeted him for lethal action.

Plaintiff Kareem's allegations also fail to establish constitutional standing for similar reasons. *See* Defs.' Mem. at 7–11. Plaintiff puts forth no factual support for his conjecture that the U.S. Government has approved him for lethal action. *See* Compl. ¶ 52. Rather, Plaintiff identifies five instances in which he has been wounded or narrowly escaped injury in hostile war zones in Syria, and he asks the Court to infer that these incidents resulted from his placement on a "Kill List" by the U.S. Government.[3] *Id.* at ¶¶ 40–54. "[T]he Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint." *Welborn*, 218 F. Supp. 3d at 72–73 (quoting *Speelman*, 461 F. Supp. 2d at 73). Plaintiff has, at best, put forth a *possible* (though highly speculative) explanation for the explosions he allegedly experienced. *See* Defs.' Mem. at 7–11. But the more plausible explanation is that Plaintiff encountered the natural consequence of working as a journalist in a war-torn country.[4] *Id.*

---

[3] Plaintiff Kareem contends that based on the ordinance used to allegedly destroy his vehicle on one occasion—a Hellfire missile—the Court can infer that he has been placed on a "Kill List" by the United States. *See* Pls.' Opp'n at 12. In support of this argument, Plaintiff cites a single conclusory statement in the Complaint that "[t]he vehicle of Kareem and his staff was struck and destroyed by a drone-launched Hellfire missile." Compl. ¶ 49. But this comment does not plausibly establish that *Plaintiff* was specifically targeted for the strike in a complex military environment. *See id.*

[4] The Department of Defense has been clear that it generally treats journalists as protected civilians under the law of war. *See* Dep't of Defense Law of War Manual, § 4.24.1 (Dec. 2016), *available at* http://ogc.osd.mil/images/law_war_manual_december_16.pdf ("In general,

5

Plaintiff Kareem similarly attempts to boost the plausibility of his claims by alleging facts in the opposition that were not included in the Complaint. *Compare* Pls.' Opp'n at 11–12, *with* Compl. ¶¶ 46–51. For example, Plaintiff now adds to his factual allegations that "none of the strikes was preceded or followed by additional strikes [and] . . . [e]ach time there was only one strike, and only on Kareem." *See* Pls.' Opp'n at 11. Plaintiff now also alleges that he "waited to visit the Artillery College until well after the battle for control of the college had concluded, and that strike did not happen at the site, but rather as Kareem was driving to it." *Id.* at 12. Again, such statements in a brief are not factual allegations that should be considered by the Court. *See Wood ex. Rel. U.S.*, 286 F.3d at 534. But, in any event, the supplemental facts presented by Kareem in his brief do not tip the scales in favor of plausibility, as the events described still occurred in a country inundated with warfare, and are thus more plausibly explained as an expected result of the ongoing armed conflict.[5]

---

journalists are protected as civilians; i.e., engaging in journalism does not constitute taking a direct part in hostilities such that such a person would be deprived of protection from being made the object of attack.").

[5] Further, the fact that Plaintiff Kareem is a United States citizen arguably makes his allegation that the Government has authorized him for lethal action even less plausible. The Government has made it clear that targeting a United States citizen for lethal action outside the United States is a drastic measure reserved for only the most extraordinary circumstances. *See* Att'y Gen. Eric Holder, Speech at Northwestern Univ. School of Law (March 5, 2012), *available at* https://www.justice.gov/ opa/speech/attorney-general-eric-holder-speaks-northwestern-university-school-law ("Any decision to use lethal force against a United States citizen . . . is among the gravest that government leaders can face."). In the armed conflict against al-Qaeda and associated forces, the Government has only publicly acknowledged authorizing lethal action against one United States citizen—Anwar al-Aulaqi. *See* President Barack Obama, Remarks at the Nat'l Def. Univ. (May 23, 2013), *available at* https://obamawhitehouse. archives.gov/the-press-office/2013/05/23/remarks-president-national-defense-university (acknowledging that the U.S. Government's killing of Anwar al-Aulaqi was the "one instance" in which an American citizen was targeted). And unlike Plaintiff's allegations here, the U.S. Government publicly identified al-Aulaqi as a prominent terrorist prior to his death—the Treasury Department designated him a Specially Designated Global Terrorist for his operational role with al-Qaeda in the Arabian Peninsula. *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 10 (D.D.C. 2010). Plaintiff

Finally, Plaintiffs' contention that the Government misconstrues the standard to be applied to the injury required for constitutional standing, Pls.' Opp'n at 14, is wrong.[6] More specifically, Plaintiffs argue that they have satisfied the imminence requirement by showing a "substantial probability of injury."[7] *Id.* (citing *Sierra Club v. Jewell*, 764 F.3d 1, 7 (D.C. Cir. 2014)). But Plaintiffs have not plausibly alleged that they have been placed on a "Kill List" at all, and without such a showing, Plaintiffs have not and cannot demonstrate a likelihood of any future injury, let alone a "substantial probability of injury."[8] Accordingly, Plaintiffs' claims should be dismissed for lack of standing.

## II. Plaintiffs Fail to State a Claim upon Which Relief Can Be Granted

Plaintiffs also fail to demonstrate in their opposition that they have stated a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555, 570

---

Kareem offers nothing to support his allegation that the United States has determined that he is a terrorist being targeted for lethal force overseas.

[6] Plaintiffs' reliance on *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979), and *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010), is misplaced. *See* Pls.' Opp'n at 15. Plaintiffs rely on these cases for the proposition that they should not have to expose themselves to future harm in order to establish standing. *Id.* But those cases are readily distinguishable, as they involve facial constitutional challenges seeking to enjoin the enforcement of certain proscriptive statutes that unquestionably applied to the plaintiff's intended conduct. *See United Farm Workers Nat'l Union*, 442 U.S. at 298; *Humanitarian Law Project*, 561 U.S. at 15. Here, Plaintiffs simply speculate that they are subject to a policy under which they may be targeted.

[7] Plaintiffs also argue that they are challenging a government action, and when "the plaintiff is himself an object of the action . . . there is ordinarily little question that the action or inaction has caused him injury." Pls.' Opp'n at 16. But that is precisely the issue presented to the Court. The Government has moved to dismiss the case because Plaintiffs have not plausibly alleged that they are the subject of the challenged government action, i.e. placed on a so-called "Kill List."

[8] In summary fashion, Plaintiff Zaidan mentions that even if he has only been targeted for capture, he would have standing to bring the instant lawsuit. *See* Pls.' Opp'n at 11 n.4. Plaintiff, however, does not allege in the Complaint that the U.S. Government is attempting to capture him. *See generally* Compl. ¶¶ 33–37.

7

(2007); *accord Burford v. Yellen*, --- F. Supp. 3d ----, 2017 WL 1214398, at *6 (D.D.C. March 31, 2017). Again, Plaintiffs have not alleged facts that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009). Rather, at most, Plaintiffs' factual assertions merely support no more than a speculative possibility that the Government has authorized Plaintiffs for lethal action. *Id.* at 678 (explaining that the factual allegations in the Complaint must present "more than a sheer possibility that a defendant has acted unlawfully"). As addressed in Defendants' opening brief, Plaintiffs' factual allegations are simply not sufficient to support a reasonable inference that they have been placed on a so-called "Kill List." *See* Defs.' Mem. at 11–13; *see also Iqbal*, 556 U.S. at 665 (explaining that whether a claim is plausible requires a "context specific" inquiry "requiring the reviewing court to draw on its experience and common sense"). The arguments Plaintiffs present in their opposition brief do not undermine this conclusion.

Plaintiff Zaidan speculates, without any factual support, that because he has purportedly been identified by the SKYNET program as a "potential terrorist," he is necessarily on a "Kill List." *See* Compl. ¶¶ 33–36. But again, even assuming as true that Plaintiff Zaidan has been identified as a terrorist or associated with terrorists, nothing else is alleged to support the inference that the United States has targeted him for lethal force (as opposed to, for example, possibly placing him on a terrorist watchlist). Likewise, Plaintiff Kareem's claims rest on a highly speculative inference that he must be on a "Kill List" because five times in the past year he has narrowly escaped injury from explosions in Syria. *See* Compl. ¶¶ 47–51. And assuming that Plaintiff Kareem's account is true (even as now expanded in his brief), the more plausible explanation for these experiences is that he has chosen to work as a journalist in a country rife with violence and warfare. In particular, even if it is taken as true that vehicles in which he

travelled in a war zone were attacked, this alone does not support an inference that he has been specifically targeted by the United States.[9]  *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.") (internal quotations omitted).

Plaintiffs primarily argue that their purported placement on a "Kill List" constitutes a well-pled fact that must be assumed to be true at the pleadings stage.  *See* Pls.' Opp'n at 8.  Plaintiffs are mistaken.  To establish a plausible claim for relief, Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Here, Plaintiffs' supposed inclusion on a "Kill List" constitutes the alleged government misconduct, and Plaintiffs must plead enough facts for the Court to plausibly infer the truth of the allegation; they cannot simply make an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  If Plaintiffs' positions are credited here, then anyone who alleges they have been identified as a terrorist would necessarily state a claim to challenge alleged targeting for lethal force, as would any journalist who faces close calls in a hostile war zone.  Neither claim would be based on a reasonable inference of fact, and would not state a plausible claim for relief.

Notwithstanding their burden to establish plausible claims for relief, *see, e.g.*, *Iqbal*, 556 U.S. at 677–78, Plaintiffs contend that it would be "unfair" to require them to allege any additional factual details because "the necessary information lies within defendants' control." Pls.' Opp'n at 9.  In support of this argument, Plaintiffs cite to cases that establish an exception

---

[9] For example, in the complex environment of a war zone in Syria, another more plausible inference is that military action may be directed at locations where enemy combatants are believed to be located.

to the Federal Rules' requirement that a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see* Pls.' Opp'n at 9 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)). First and foremost, the exception articulated by the cited cases cannot reasonably be applied to a lawsuit like this one challenging a purported national security decision for allegedly violating the APA. Moreover, the D.C. Circuit has explained that this exception does not permit "the filing of a complaint as a pretext for the discovery of unknown wrongs." *Kowal*, 16 F.3d at 1279 n.3 (citations omitted). Here, where Plaintiffs simply ask the Court to infer, without any plausible basis, that the U.S. Government has placed them on a "Kill List," the Court should reject Plaintiffs' attempt to circumvent the applicable pleading standard.

### III.  Plaintiffs' Claims Present Non-Justiciable Political Questions

Finally, assuming, for the sake of argument, that Plaintiffs could establish standing and state factually plausible claims, courts have recognized that a challenge to the Executive's discretion to authorize military force in a foreign country presents non-justiciable political questions. *See, e.g.*, *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005) (explaining that there can be "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government"). Indeed, probing into the propriety of authorizing lethal action against individuals in a foreign country based on their purported terrorist activities would require the consideration of sensitive and complex national security decisions, far afield from the Judiciary's traditional area of expertise. *See El-Shifa Pharm. Indus. v. United States*, 607 F.3d 836, 843–44 (D.C. Cir. 2010) (en banc) ("In military matters in particular, the courts lack the competence to assess the strategic decision to deploy force or to create standards to determine whether the use of force was justified or well-

founded."). For this reason, judicial review of any purported decisions to place Plaintiffs on a "Kill List" would raise non-justiciable political questions. *See* Defs.' Mem. at 13–16.

Plaintiffs argue, unconvincingly, that the Presidential Policy Guidance ("PPG") provides judicially manageable standards by which the Court could undertake its review of Plaintiffs' claims.[10] *See* Pls.' Opp'n at 18–19, 20. The D.C. Circuit recently rejected this argument when affirming the dismissal of a case pursuant to the political question doctrine. *See Jaber v. United States*, --- F.3d --- , 2017 WL 2818645 (D.C. Cir. June 30, 2017). The D.C. Circuit observed that while the Government may lay out rules understood to govern its conduct, the ultimate determination about whether to target someone for lethal action falls squarely within the purview of the Executive. *Id.* at *6. And by implementing these rules, the Executive "did not concede authority to the Judiciary to enforce those rules." *Id.* "[I]t is the Executive, and not a panel of the D.C. Circuit, who commands our armed forces and determines our nation's foreign policy." *Id.*

In passing, Plaintiffs improperly rely on *Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012), in support of their contention that the PPG provides judicially manageable standards.[11] *See* Pls.' Opp'n at 19. The statutory provision at issue in *Zivotofsky*—section 214(d) of the Foreign Relations Authorization Act—provides that, for purposes of issuing a passport to a United States

---

[10] *See* Procedures for Approving Direct Action Against Terrorist Targets Located Outside the United States and Areas of Active Hostilities, *available at* https://www.justice.gov/oip/foia-library/procedures_for_approving_direct_action_against_terrorist_targets/download.

[11] Plaintiffs also suggest that the Fourth Circuit's decision in *Al Shimari v. CACI Premier Technology, Inc.*, 840 F.3d 147, 159 (4th Cir. 2016), supports their position that the case is not barred by the political question doctrine. *See* Pls.' Opp'n at 21. The D.C. Circuit recently expressed disagreement with the Fourth Circuit's decision, as well as reaffirmed that the D.C. Circuit's en banc decision in *El-Shifa*, which exhaustively discussed the political question doctrine, "controls." *Jaber*, 2017 WL 2818645, at *4 n.1.

11

citizen born in Jerusalem, the Secretary of State shall, upon request, "record the place of birth as Israel." *Zivotofsky*, 566 U.S. at 191–92.  In apparent conflict with section 214(d), the State Department's Foreign Affairs Manual says expressly that passport officials should record "Jerusalem," rather than "Israel or Jordan," when recording on a passport the birthplace of an individual born in Jerusalem.  *Id.*  After the State Department refused Zivotofsky's request to have Jerusalem identified as his birthplace on his passport, his parents filed a lawsuit challenging the constitutionality of section 214(d).  *Id.* at 192–93.  The district court determined that the case presented a non-justiciable political question regarding the political status of Jerusalem, and the D.C. Circuit affirmed the decision.  *Id.* at 194.  The Supreme Court reversed the D.C. Circuit, holding that Zivotofsky's claim required the Court to determine the constitutionality of section 214(d), and more specifically, "whether the statute impermissibly intrudes upon Presidential powers under the Constitution."  *Id.* at 196.  "No policy underlying the political question doctrine suggests that Congress or the Executive . . . can decide the constitutionality of a statute; that is a decision for the courts."  *Id.* at 196–97 (citation omitted).

Here, in contrast, Plaintiffs neither challenge the constitutionality of a statute nor suggest that this case would require the Court to determine whether Congress overstepped its authority.  *See generally* Compl. ¶¶ 67–93.  And unlike the ultimate question in *Zivotofsky* regarding whether the Constitution affords Congress or the Executive with certain powers, there can be no dispute that authorizing a military strike overseas is reserved to the Executive Branch.  *See Jaber*, 2017 WL 2818645, at *5 ("The [*Zivotofsky*] Court was not called upon to impose its own foreign policy judgment on the political branches, only to say whether the congressional statute encroached on the Executive's constitutional authority.").  Thus, the holding in *Zivotofsky* is simply not applicable.

Plaintiffs also unpersuasively argue that certain domestic statutes and international laws provide a basis by which the Court may exert its jurisdiction. *See* Pls.' Opp'n at 19. Although the cited provisions address certain forms of unlawful killings, they do not put forth judicially manageable standards that could be used to evaluate the propriety of the Government's purported action to target suspected terrorist organizations and leaders for lethal force overseas. Indeed, the Court would still need to review national security judgements to decide such claims, first by determining whether Plaintiffs are targets for lethal action,[12] why they may have been so targeted, and then whether they are the subject of unlawful government conduct forbidden by domestic or international law. Such an inquiry would necessarily require the Court to consider the same national security and foreign policy determinations committed to the Executive by the Constitution.

In the end, this case would require the Court to reconsider hypothetical national security and foreign policy decisions functionally indistinguishable from those that have been barred by the political question doctrine in the past. Most recently in *Jaber v. United States*, the D.C. Circuit concluded that the political question doctrine precluded the district court from considering the propriety of the U.S. Government's alleged decision to conduct a drone strike against terrorist targets in Yemen. *See* 2017 WL 2818645, at *2–6. Similarly, the D.C. Circuit in *El-Shifa Pharmaceutical Industries v. United States* determined that the political question doctrine prohibited the district court from assessing the U.S. Government's decision to carry out an air strike on a factory in Sudan believed to be associated with al-Qaeda. *See* 607 F.3d at 843.

---

[12] Whether or not, or under what circumstances, the United States may target a particular foreign terrorist organization and its senior leadership for lethal force overseas is classified national security information subject to protection from disclosure in litigation. *See Al-Aulaqi*, 727 F. Supp. 2d at 53–54 (invoking the state secrets privilege over such information).

And even more directly on point, the district court in *Al-Aulaqi v. Obama* held that it did not have jurisdiction to consider the constitutionality of al-Aulaqi's purported placement on a "Kill List" that allegedly subjected him to "a standing order that permits the [U.S. Government] to kill him[.]" 727 F. Supp. 2d 1, 11, 44–52 (D.D.C. 2010).  Here, at bottom, Plaintiffs ask the Court to review the merits of an alleged determination that they are associated with a terrorist organization and have been targeted for lethal force overseas—the very kind of military and national security judgement that, if it occurred, would be committed to the Executive.  As outlined above, the Court need not reach such a political question because Plaintiffs have not plausibly alleged being so targeted in the first place.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' opening memorandum, the Court should dismiss this action in its entirety.

Dated: July 25, 2017                    Respectfully submitted,

                                        CHAD A. READLER
                                        Acting Assistant Attorney General

                                        ANTHONY J. COPPOLINO
                                        Deputy Director, Federal Programs Branch


                                        */s/ Stephen M. Elliott*
                                        STEPHEN M. ELLIOTT
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        P.O. Box 883
                                        Washington, D.C. 20044
                                        Tel: (202) 305-8177
                                        Fax: (202) 616-8470
                                        Email: stephen.elliott@usdoj.gov

                                        *Counsel for Defendants*