**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**BILAL ABDUL KAREEM,**                )
                                                    )
              **Plaintiff,**                        )
                                                    )
      **v.**                                        )
                                                    )      **Civil Action No. 17-581 (RMC)**
**GINA CHERI HASPEL,**                 )
**Director of the Central Intelligence**   )
**Agency,** _et al._,                       )
                                                    )
              **Defendants.**                   )
_____   )

**MEMORANDUM OPINION**

What constitutional right is more essential than the right to due process before the

government may take a life?  While the answer may be none, federal courts possess limited

authority to resolve questions presented in a lawsuit, even when they are alleged to involve

constitutional rights.  This is such a case.  Despite the serious nature of Plaintiff's allegations,

this Court must dismiss the action pursuant to the government's invocation of the state secrets

privilege.

Plaintiff Bilal Abdul Kareem is a journalist specializing in reporting on terrorism

and conflict in the Middle East.  Mr. Kareem has been the victim or near victim of at least five

aerial bombings while in Syria.  Accordingly, he believes his name is on a list of individuals the

United States has determined are terrorists and may be killed (the so-called Kill List).  Mr.

Kareem sues the Director of the Central Intelligence Agency (CIA), the Secretary of the

Department of Defense (DOD), the Secretary of the Department of Homeland Security (DHS),

the Attorney General, and the Director of National Intelligence (DNI), all in their official

capacities, as well as the Department of Justice (DOJ), DOD, DHS, and CIA.  The Court

1

previously granted in part and denied in part Defendants' motion to dismiss for lack of standing

and failure to state a claim upon which relief may be granted.  Defendants now move to dismiss

Mr. Kareem's remaining claims pursuant to the state secrets privilege arguing that the facts

necessary for Mr. Kareem to establish his *prima facie* case or for Defendants to defend against

his claims are classified and without disclosure of those facts the case cannot proceed.  Having

carefully considered the issues, this Court agrees.

## I.  BACKGROUND

The facts are described in detail in the decision on Defendants' first motion to

dismiss, so they will be repeated here only as relevant.  *See Zaidan v. Trump*, 317 F. Supp. 3d 8,

14-16 (D.D.C. 2018).  After the Court permitted three of Mr. Kareem's claims to proceed, the

parties discussed potential pretrial resolution.  Despite two months of discussions, the parties

were unable to resolve the litigation.[1]  Mr. Kareem then asked to begin discovery and Defendants

notified the Court that they were considering a second motion to dismiss based on the state

secrets privilege.

After considerable time, due to multiple motions for extension of time and an

extensive government shutdown, Defendants filed a motion to dismiss pursuant to the state

secrets privilege on January 30, 2019.  Mem. in Supp. of Defs.' Mot. to Dismiss (Mot.) [Dkt. 24-

1].  Mr. Kareem opposed.  Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss (Opp'n) [Dkt.

27].  Defendants replied.  Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss (Reply) [Dkt. 28].  The

motion is ripe for review.

---

[1] Defendants agreed to review a written submission from Mr. Kareem to consider if in fact a
decision about whether to target him had been made or was contemplated.  Mr. Kareem declined
and asked to review the information the Defendants already had in order to rebut it.

## II.  LEGAL STANDARD

The United States is privileged to refuse to disclose information requested in litigation when "there is a reasonable danger" that the disclosure "will expose military matters which, in the interest of national security, should not be divulged." *United States v. Reynolds*, 345 U.S. 1, 10 (1953).  The privilege "is not to be lightly invoked," *id*. at 7, but "[c]ourts should accord the 'utmost deference' to executive assertions of privilege upon grounds of military or diplomatic secrets." *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978) (*Halkin I*) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).

Review of an invocation of the state secrets privilege occurs in three steps.  First, "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7-8.  Next, the Court must evaluate the basis for the privilege "without forcing a disclosure of the very thing the privilege is designed to protect." *Id*. at 8.  The sensitivity of the privilege and the information at issue requires the Court to review declarations submitted, both publicly and *in camera*, to determine if the privilege is properly invoked.  "[T]he court must be satisfied from all the evidence and circumstances, and 'from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'  If the court is so satisfied, the claim of the privilege will be accepted without requiring further disclosure." *Id*. at 9 (quoting *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951)).  It is not necessary for the Court to examine the actual evidence at issue to make this determination.  *See id*. at 9-10.

Finally, once the Court finds that there is a reasonable danger that disclosure of the information will expose military matters or harm national security, the Court must determine

3

whether the case may proceed without the information or whether it is so entwined in the matter

that the case cannot be litigated and dismissal is necessary.  *See Mohamed v. Jeppesen Dataplan,*

*Inc.*, 614 F.3d 1070, 1096 (9th Cir. 2010) (holding that when "there is no feasible way to litigate

[the defendant's] alleged liability without creating an unjustifiable risk of divulging state

secrets," the case must be dismissed).

### III.  ANALYSIS

**A.  Did the Government Satisfy the Procedural Requirements to Invoke the Privilege?**

The government has satisfied the three procedural requirements for invoking the

state secrets privilege.  First, the privilege was asserted by the United States government itself,

not a third party.  Second, the claim of privilege was made through a formal declaration by the

heads of agency responsible for the information.  Patrick M. Shanahan, then-Acting Secretary of

Defense, and Daniel R. Coats, then-Director of National Intelligence, submitted formal

declarations, both public and *in camera/ex parte*, explaining that they are the individuals

responsible for the relevant information and invoking the privilege.  *See* Ex. 1, Mot., Public

Decl. and Assertion of Military and State Secrets Privilege by Patrick M. Shanahan, Acting

Secretary of Defense (Shanahan Decl.) [Dkt. 24-2]; Ex. 2, Mot., Decl. of Daniel R. Coats,

Director of National Intelligence (Coats Decl.) [Dkt. 24-3].  Third, Acting Secretary Shanahan

and Director Coats both declared that they personally reviewed the relevant information and

determined that invoking the state secrets privilege was warranted.  *See* Shanahan Decl. ¶ 8;

Coats Decl. ¶ 9.

**B.  Does the Information Qualify as Privileged?**

"When properly invoked, the state secrets privilege is absolute.  No competing

public or private interest can be advanced to compel disclosure of information found to be

4

protected by a claim of privilege." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983).  Due to the absolute nature of the privilege, "a court must not merely unthinkingly ratify the executive's assertion of absolute privilege, lest it inappropriately abandon its important judicial role." *In re United States of America*, 872 F.2d 472, 475 (D.C. Cir. 1989).  The government is required to show that disclosure of "the information poses a reasonable danger to secrets of state." *Halkin v. Helms*, 690 F.2d 977, 990 (D.C. Cir. 1982) (*Halkin II*).

Other claims of privilege can be often overcome when the necessity presented by the requesting party outweighs the privilege, but such is not the case when state secrets would be disclosed.  Instead, the degree of necessity "determine[s] how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate.  Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *Reynolds*, 345 U.S. at 11 (citing *Totten v. United States*, 92 U.S. 105, 107 (1875)).  "Therefore, the critical feature of the inquiry in evaluating the claim of privilege is not a balancing of ultimate interests at stake in the litigation.  That balance has already been struck.  Rather, the determination is whether the showing of the harm that might reasonably be seen to flow from disclosure is adequate in a given case to trigger the absolute right to withhold the information sought in that case." *Halkin II*, 690 F.2d at 990.

Mr. Kareem's claims involve allegations that the United States targeted an American citizen for lethal action in a foreign country without due process of law.  His need for the information to prove his claims is unquestionably strong.  Thus, "close examination of the government's assertions is warranted." *Ellsberg*, 709 F.2d at 63.

The government invokes the state secrets privilege to protect "the existence and operational details of alleged military and intelligence activities directed at combating the terrorist threat to the United States."   Mot. at 6.   Mr. Kareem specifically requests discovery into:

(i)   whether or not the United States has in fact targeted Kareem for lethal force and, if so, the facts on which the Government allegedly relied in reaching a purposed determination;

(ii)   what process the Government used to allegedly designate Kareem and, if he continues to be an alleged target, what the current targeting process is; and

(iii)   whether or not the United States attempted to kill Kareem in the airstrikes alleged in the Complaint.

*Id*. at 6-7.   Based on a review of the public and classified declarations, the Court finds that the information Mr. Kareen asks for constitutes privileged state secrets because "there is a reasonable danger" that disclosing such information would endanger national security. *Reynolds*, 345 U.S. at 10.   "Detailed statements underscore that disclosure of [the privileged] information . . . and the means, sources and methods of intelligence gathering in the context of this case would undermine the government's intelligence capabilities and compromise national security."   *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1204 (9th Cir. 2007).

The government explains that disclosure of whether an individual is being targeted for lethal action would permit that individual to alter his behavior to evade attack or capture and could risk intelligence sources and methods if an individual learns he is under surveillance.   *See* Mot. at 11.   Acting Secretary Shanahan stated in his public declaration that disclosing classified information about targeted airstrikes could hinder the United States' military operations in Syria, *see* Shanahan Decl. ¶¶ 15-16, and disclosing whether the United States possesses information about a particular individual could alert them, allow them to seek to

prevent further collection, and risk disclosure of intelligence sources and methods, thereby thwarting intelligence efforts.  *See id*. ¶¶ 17-18.  Director Coats similarly declared that:  (1) disclosing whether the United States targets terrorists abroad with lethal force "could reasonably be expected to cause harm to national security by alerting terrorists and terrorist organizations to specific means that the U.S. Government is using, or has chosen not to use, to combat terrorism," Coats Decl. ¶ 12; (2) confirming or denying whether Mr. Kareem has been designated for the use of lethal force could permit him to evade capture or further action by the United States, *see id*. ¶¶ 13-14; and (3) disclosing whether the United States maintains information about Mr. Kareem could "reveal the sources and methods by which such information was obtained, compromising the safety and effectiveness of those sources and methods."  *Id*. ¶ 16.

Mr. Kareem raises four points against allowing the privilege to apply.  First, he argues that the constitutional right at issue—his right to due process before the United States can take his life—is so paramount as to make the state secrets privilege inapplicable.  Second, he asks the Court to consider alternative methods of protecting the information, such as use of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III, § 1 *et seq.*, to ensure the classified information is not disclosed outside cleared counsel and the Court.  Third, Mr. Kareem challenges the assertion that all of the information remains privileged because the United States has previously disclosed that U.S. citizens were targeted with lethal action.  Finally, he differentiates his request for *ad hoc* relief—review of the alleged decision to target him with lethal action before the targeting is successful—with prior state secrets privilege cases which requested *post hoc* relief—challenges to actions taken by the government which could not be further prevented or undone.

Mr. Kareem's first objection focuses on the significance of the right at issue—his right to due process, *i.e.*, evidence and argument before the United States can take his life. But the state secrets privilege is absolute. Invocation of the privilege has the "serious potential [to] defeat[] worthy claims for violations of rights that would otherwise be proved"; it is for this reason that "the privilege is not to be lightly invoked." *In re United States*, 872 F.2d at 476 (internal quotation marks and citations omitted); *see also In re Sealed Case*, 494 F.3d 139, 143 (D.C. Cir. 2007) ("[I]t hardly follows that the privilege evaporates in the presence of an alleged constitutional violation."); *Halkin II*, 690 F.2d at 1001 ("Although under this analysis there may indeed be illegal or unconstitutional actions which will go unchallenged in a federal court due to the lack of a proper party to bring suit, that is the result required here.") (internal quotation marks and citation omitted). Thus, the government did not rush to claim state secrets here, although it warned such secrets were at issue, it only filed the instant motion when the Court denied its first motion to dismiss. The Court finds that the government has not invoked the privilege lightly but has instead engaged in months of consideration before filing its motion supported by reasoned declarations from the heads of the agencies responsible for the information. Nonetheless, the significance of Mr. Kareem's allegations requires the Court to take a thorough and questioning look at the reasons presented by the United States for invoking the privilege, but it does not erase the privilege altogether.

While no courts have previously addressed the state secrets privilege in the context of targeted killing, courts have addressed the privilege in cases involving other constitutional claims. The privilege has been invoked in cases involving warrantless surveillance, *see, e.g.*, *Mohamed*, 614 F.3d at 1073 (affirming dismissal of challenge to an alleged extraordinary rendition program of the Central Intelligence Agency due to the invocation

of the state secrets privilege); *Al-Haramain*, 507 F.3d at 1205 (holding that the state secrets

privilege prevented disclosure of classified information and without that information plaintiff

could not establish standing to challenge his alleged surveillance; case remanded for

consideration of the interplay between the state secrets privilege and the Foreign Intelligence

Surveillance Act, 50 U.S.C. § 1801 *et seq.*); *Halkin II*, 690 F.2d at 981 (upholding dismissal of

claims under the First, Fourth, Fifth, and Ninth Amendments, involving warrantless rendition

and torture, due to the invocation of the state secrets privilege); *El-Masri v. Tenet*, 437 F. Supp.

2d 530, 539 (E.D. Va. 2006) ("Thus, while dismissal of the complaint deprives El-Masri of an

American judicial forum for vindicating his claims, well-established and controlling legal

principles require that in the present circumstances, El-Masri's private interests must give way to

the national interest in preserving state secrets."), *aff'd sub nom. El-Masri v. United States*, 479

F.3d 296 (4th Cir. 2007).  In each of those instances, invocation of the state secrets privilege was

sufficient to prevent adjudication of the underlying constitutional claims and Mr. Kareem points

to no legal authority that would permit this Court to hold differently in this case.[2]

       Next, Mr. Kareem probes the limits of the state secrets privilege and likens his

predicament to a criminal trial.  Based on that analogy, he requests that this Court institute CIPA

---

[2] Mr. Kareem proposes that persons placed on the Kill List should be provided the same
procedural protections as organizations designated as terrorists by the State Department or
Treasury.  This Court is not the proper institution to adopt that proposal.  *See Halkin II*, 690 F.2d
at 1001 ("[W]here the Constitution compels the subordination of [plaintiff's] interest in the
pursuit of [his] claims to the executive's duty to preserve our national security, this means that
remedies for constitutional violations that cannot be proven under existing legal standards, if
there are to be such remedies, must be provided by Congress. . . .  [T]hat is where the
responsibility for compensating those injured in the course of pursuing the ends of state must
lie.").

rules to protect the privileged information, rather than excluding it altogether.[3]  In a criminal

trial, the government may not withhold information that would be material to the defense even if

it is a privileged state secret; to do so would be to deprive the defendant of liberty without due

process.  The United States may either proceed with the indictment and disclose the information

or forego prosecution by dismissing the charges.  *See Reynolds*, 345 U.S. at 12 ("The rationale of

the criminal cases is that, since the Government which prosecutes an accused also has the duty to

see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke

its governmental privileges to deprive the accused of anything which might be material to his

defense.").  However, the Supreme Court has held when the government is not the movant in a

civil case the rationale applied in criminal cases is not applicable.  *See id*. ("Such rationale has no

application in a civil forum where the Government is not the moving party, but is a defendant

only on terms to which it has consented.").

   Mr. Kareem specifically equates his situation with a criminal capital case, where

extra procedural protections are provided the defendant to ensure that punishment "is not meted

out arbitrarily or capriciously." *California v. Ramos*, 463 U.S. 992, 999 (1983).  He argues that

before a criminal defendant may be subject to capital punishment he has the opportunity to

review, and potentially dispute, "a fulsome record of the allegations and considerations that will

be used against him."  Opp'n at 5.  He asks this Court for the same protections because he fears

---

[3] "In criminal proceedings under the Classified Information Procedures Act (CIPA) . . . the government may move for alternatives to disclosing classified information, such as substituting 'a statement admitting relevant facts that the specific classified information would tend to prove' or 'a summary of the specific classified information.'  The district court must 'grant such a motion if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information.'"  *Al Odah v. United States*, 559 F.3d 539, 547 (D.C. Cir. 2009) (quoting 18 U.S.C. App. III, § 6(c)(1)).

the United States military will kill him.  Were the United States to choose to prosecute Mr.

Kareem for his alleged involvement in terrorist activities, the government would be required to

disclose, with the relevant protections, any classified information that would be material to Mr.

Kareem's defense.  But Mr. Kareem is not a criminal defendant, he is a plaintiff in a civil suit

against the United States, which setting renders the state secrets privilege absolute after it is

properly asserted.

        Third, Mr. Kareem challenges the legitimacy of the privilege because the United

States has previously disclosed the existence of the Kill List and indicated that a United States

citizen had been on the list.  *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 59 (D.D.C. 2014)

("President Barack Obama and Attorney General Eric Holder, Jr., have admitted that the United

States targeted and killed Anwar Al-Aulaqi, a terrorist who was a key leader of al-Qa'ida in the

Arabian Peninsula.").  Mr. Kareem challenges the legitimacy of invoking the state secrets

privilege here since the United States previously determined that its security interests allowed the

disclosure of a name on the Kill List.  Contrary to Mr. Kareem's argument, the D.C. Circuit has

already found that "[t]he government is not estopped from concluding in one case that disclosure

is permissible while in another case it is not."  *Halkin I*, 598 F.2d at 9.  This Court concludes that

a previous U.S. disclosure that an individual had been targeted for lethal action does not mean

that it has waived its right, as a state secret, to refuse to disclose the who, why, and how it might

identify future targets.

        Finally, Mr. Kareem argues that the prospective nature of his case differentiates

his dilemma from previous cases dealing with the state secrets privilege that challenged actions

already taken by the United States.  He maintains that none of the cited cases "involved a

prosecution of a U.S. citizen or any action analogous to a prosecution."  Opp'n at 12.  In this

assertion he is correct:  he is a U.S. citizen, voluntarily in Syria, reporting on the fighting by insurgents, and allegedly targeted by the United States without success so far.  However, the applicability of the state secrets privilege has consistently been recognized in civil litigation against the United States even when a plaintiff was alleging violations of constitutional rights, which is exactly what the instant lawsuit entails.  The Court understands the differences between this and prior cases but the similarities are controlling and require the same conclusion.

A court does not merely ratify the government's assertion of privilege willy-nilly. This Court has reviewed the declarations submitted by the government and carefully considered Mr. Kareem's claims and need for the documents, as well as the reasoning behind the privilege. Consistent thereto, the Court finds the state secrets privilege bars disclosure of the requested information to Mr. Kareem because disclosure would present a reasonable danger to national security.

### C.  May the Case Proceed Without the Privileged Information?

There is still a question as to whether the unavailability of the requested information is fatal to Mr. Kareem's complaint.  A court must dismiss a case in which a privilege of state secrets is sustained when:  (1) disclosure is necessary for the plaintiff to make its *prima facie* case; (2) disclosure is necessary for the defendant to defend itself; or (3) further litigation would present an unjustifiable risk of disclosure.  *See Mohamed*, 614 F.3d at 1087.  The United States focuses on Mr. Kareem's *prima facie* case, arguing that Mr. Kareem cannot establish his standing to sue without the information.  The Court agrees and notes that all three reasons justify dismissal.  Because "there is no feasible way to litigate [the United States'] alleged liability without creating an unjustifiable risk of divulging state secrets," this case must be dismissed.  *Id*. "[T]he claims and possible defenses are so infused with state secrets that the risk of disclosing them is both apparent and inevitable."  *Id*. at 1089.

12

To prove his *prima facie* case, Mr. Kareem must be able to show he was in fact targeted by the United States with lethal force.  The Court previously found Mr. Kareem alleged facts sufficient, if proven, to survive a motion to dismiss, but having now held that the government is not required to disclose whether Mr. Kareem has been targeted as alleged, it is impossible for Mr. Kareem to obtain the necessary information to prove his claims.  Without access to the privileged information, Mr. Kareem is unable to establish whether he was targeted by lethal force or what information was considered in reaching the alleged decision to target him.  Mr. Kareem is "incapable of demonstrating that [he has] sustained a violation of" his constitutional rights without the withheld information.  *Halkin II*, 690 F.2d at 999.  He "ha[s] alleged, but ultimately cannot show, a concrete injury amounting to either a 'specific present objective harm or a threat of specific future harm.'"  *Id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 14 (1972)).  In this instance, in which the relevant information is solely in the control of the United States and is protected by the state secrets privilege, Mr. Kareem is left with no method to obtain it to pursue his case, which must therefore be dismissed.  The same analysis applies to the government's ability to defend itself against the allegations and also requires dismissal.

When a plaintiff's *prima facie* case and a defendant's defenses are not affected by the state secrets privilege, a court must still dismiss if "any attempt to proceed will threaten disclosure of the privileged matters."  *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1241-42 (4th Cir. 1985).  In that circumstance, the risk of disclosure alone leads to dismissal.  The analysis applies here.  The totality of the issues to be litigated surrounds the alleged decision to target Mr. Kareem but all such information is privileged as state secrets and will not be disclosed by the United States.  "With no hope of a complete record and adversarial development of the

[relevant] issue," *Halkin II*, 690 F.2d at 1000, the Court cannot even begin an inquiry.  The Complaint must be dismissed.

### IV.   CONCLUSION

For the foregoing reasons the Court will grant Defendants' Motion to Dismiss pursuant to the State Secrets Privilege [Dkt. 24].  A memorializing Order accompanies this Memorandum Opinion.

Date: September 24, 2019                           _____
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge