```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA


AHMAD MUAFFAQ ZAIDAN, ET AL   :
                              :
                 Plaintiffs,  :          Docket No. CV 17-581
          vs.                 :
                              :            Washington, D.C.
                              :        Wednesday, July 18, 2018
DONALD J. TRUMP, ET AL        :              10:05 a.m.
                              :
                 Defendants.  :
----------------------------x



                  TRANSCRIPT OF STATUS CONFERENCE
             BEFORE THE HONORABLE ROSEMARY M. COLLYER
               UNITED STATES DISTRICT SENIOR JUDGE



APPEARANCES:

For the Plaintiffs:       TARA J. PLOCHOCKI, Esquire
                          JEFFREY D. ROBINSON, Esquire
                          Lewis Baach Kaufmann Middlemiss
                          1899 Pennsylvania Ave., NW
                          Suite 600
                          Washington, DC  20006


For the Defendants:       STEPHEN ELLIOTT, Esquire
                          KATHRYN C. DAVIS, Esquire
                          ANTHONY J. COPPOLINO, Esquire
                          U.S. Department of Justice
                          Federal Programs Branch
                          20 Massachusetts Ave., NW
                          Washington, DC  20036

Court Reporter:           CRYSTAL M. PILGRIM, RPR, FCRR
                          Official Court Reporter
                          United States District Court
                          District of Columbia
                          333 Constitution Avenue, NW
                          Washington, DC  20001
```

1                    P-R-O-C-E-E-D-I-N-G-S

2         THE DEPUTY CLERK:  Civil action 17-581, Ahmad Zaidan,

3  et al versus Donald J. Trump, et al.

4      For the plaintiff, Tara Plochocki and Jeffrey Robinson.

5      For the defense, Steven Elliott, Kathryn Davis and Anthony

6  Coppolino.

7         THE COURT:  Good morning, everyone.

8         MR. ROBINSON:  Good morning, Your Honor.

9         MS. PLOCHOCKI:  Good morning, Your Honor.

10        THE COURT:   I thought it would be valuable to have a

11 status conference at this point so that each of you could say

12 how you think this case should proceed to conclusion.

13     I have opinions about that, but I don't want to express my

14 opinions until you at least have a chance to say wait, no,

15 stop, this is what we get to do.

16     So why don't I ask the plaintiff how you, what you think

17 should be the next step, Ms. Plochocki?

18        MS. PLOCHOCKI:  Yes, Your Honor.

19        THE COURT:  Nice to see you, ma'am.

20        MS. PLOCHOCKI:  You as well.

21     Thank you for asking that question.  We've done some

22 thinking about this ourselves.  We were hoping the dispute

23 would be meaningfully narrowed when the government submitted

24 its answer, but we're not in that position right now.

25     The government cited that it cannot confirm or deny the

1   allegations in the complaint because they would require

2   disclosure of national security information 40 times.  At this

3   point all we've agreed to is that plaintiff, Mr. Kareem, is a

4   U.S. citizen and indeed the defendants are a federal agency of

5   the United States.  So that really leaves us nowhere.

6       We think before we proceed to Rule 26 initial disclosures,

7   before we serve discovery requests where we're likely to get

8   the same kind of responses, that defendants be required to

9   answer a limited set of questions so that we can tailor any

10  discovery requests to what is actually in dispute.  But right

11  now we don't even know if we have a dispute.

12          THE COURT:  I thought this was an APA claim?  Wasn't

13  it brought under the APA?

14          MS. PLOCHOCKI:  Yes, it is, Your Honor.

15          THE COURT:  Well, there isn't usually discovery in an

16  APA case.  Okay, so what you're anticipating, what you want me

17  to require the government to do is provide more specific

18  limited information.

19      What kinds of questions or what kinds of information did

20  you want?

21          MS. PLOCHOCKI:  Your Honor, we've identified six

22  things that we think we need to move the case forward in a

23  meaningful way.

24          THE COURT:  Okay.

25          MS. PLOCHOCKI:  The first is was a determination made

1   by defendants to target plaintiff Kareem for lethal action?

2        THE COURT:  Okay.

3        MS. PLOCHOCKI:  If it wasn't, we don't even have a

4   case.

5        Did defendants actually try to kill Mr. Kareem and if so,

6   were any of the attempts described in the complaint?  This

7   would help us establish a factual record on which a judgment

8   could be based.

9        Third is what was the process by which the defendants

10  decided to target Mr. Kareem for lethal action?

11       Fourth is what was the factual basis for deciding to

12  target Mr. Kareem for lethal action?

13       Fifth is is Mr. Kareem still in fact a target for lethal

14  action?  And what, if anything, is the process in place now for

15  determining whether someone may be targeted for lethal action?

16       The sixth question, just to clarify, is that it goes to

17  the remedy.  We have sought an injunction asking this Court to

18  remove or order the government to remove Mr. Kareem from the

19  kill list so that if they do want to add him back that they do

20  so with due process in mind.

21       So in order to fashion a remedy that imposes the least

22  burden possible on the government, we would want to know what

23  is the process now so that we can avail Mr., have Mr. Kareem

24  avail himself of his Fifth Amendment rights, but being mindful

25  of legitimate national security concerns and confidentiality

1   concerns that the government has.

2       We should also say, Your Honor, that we are open to

3   receiving this information in whatever way the government feels

4   it can proceed.  We understand that these are sensitive issues,

5   that classified information may be involved of a kind that

6   cannot be disclosed in a public setting.  So we are --

7           THE COURT:  And it can't be disclosed to anybody who

8   doesn't have a clearance either.

9           MS. PLOCHOCKI:  We're mindful of that, Your Honor.

10          THE COURT:  Do you have a clearance?

11          MS. PLOCHOCKI:  I do have a clearance.

12          THE COURT:  Do you have a clearance for this?  A

13  clearance isn't just a clearance.

14      But anyway, I'm interrupting you, but okay.  Keep going.

15          MS. PLOCHOCKI:  Not at all, Your Honor.

16      So we just want to put on the record that we are mindful

17  of the government's concerns about the security of its

18  information and what can be put out in public in ways that they

19  may want to alleviate their concerns by perhaps having things

20  reviewed in a secured facility, what have you.  That's up to

21  the government to say.

22      But we are looking forward to adjudicating this case on

23  the merits but we don't feel like the answer has given us

24  anywhere to go as of now.

25          THE COURT:  Okay.  Thank you, ma'am.

1      Mr. Elliott.

2          MR. ELLIOTT:  Good morning, Your Honor.

3          THE COURT:  Good morning, sir.

4          MR. ELLIOTT:  As is evident from the answer the

5  government filed last week, the government believes this case

6  presents very complex issues.  It's issues that implicate

7  highly sensitive and classified information.  The federal

8  agencies are still discussing the matter internally and on an

9  inter agency basis.  They are assessing how this case can

10  potentially proceed and considering all its options.

11      One of those options is the assertion of the state secrets

12  privilege and then the government moving to dismiss the case on

13  the grounds that the case cannot be litigated in the absence of

14  the privileged information.

15      The government would propose or respectfully request that

16  the Court defer any further proceedings for 60 days.  If the

17  government ultimately determines that asserting the state

18  secrets privilege is necessary and appropriate here, Your Honor

19  may be aware that the process for authorization is quite

20  comprehensive and time consuming.

21      The attorney general's 2009 memorandum on the topic

22  outlines a multi layer authorization process at the Department

23  of Justice that ultimately acquires authorization by the

24  attorney general himself.

25      Again, that's quite a comprehensive and time consuming

1  process which is why we suggested that the Court defer these

2  proceedings for an additional 60 days.

3       THE COURT:  Okay.  Let me and I understand that too.

4  You're both being so clear, it's very nice.

5       We've all given this some thought.  I perhaps have

6  misapprehended what the plaintiff really wanted.  I thought

7  that the plaintiff wanted to be sure that the U.S. Government

8  did not target him because we all know that we don't know that

9  the government targeted him.  We just know what he alleges in

10  the complaint as his facts but we don't have knowledge of that.

11  And I actually didn't expect you to come forward with knowledge

12  of that.  Yea or nay.

13       But it seemed to me that the, what the plaintiff really

14  wanted was assurance that nobody would target him based on meta

15  data alone or the fact that he was in strange places talking to

16  strange people and that if he could just get some information

17  into the government's hands whoever the decision makers are, we

18  are operating somewhat on the assumption that the process for

19  designation for the kill list is the same as it was set up a

20  few years ago.

21       Because the government hasn't said no, yes, but whatever

22  that process is that the plaintiff's individual information as

23  to the citizenship, as to his rights, as to what he does for a

24  living, as to why he may be in strange places, et cetera to

25  explain that he is not to the best of his ability in writing a

1  combatant or an enemy of the United States.  Clearly the

2  government might have its own information that might be

3  inconsistent, if you will, with the position taken by the

4  plaintiff.  I don't know.

5       My concept has been that what we needed was to be sure

6  that if the government were going to target anybody who's been

7  able to raise his hand and say stop, stop, I'm a U.S. citizen,

8  I'm entitled to consideration, that we make sure that happens.

9  But the result of that consideration isn't actually something

10  to be decided in a court of law.  At least not usually.

11       And so it's a due process consideration which is what --

12  it surprises me, if you will, about the plaintiff's approach

13  because I don't think that it's going to be possible to get, in

14  any form, to get the government to answer the six questions

15  that have just been posed.

16            MR. ELLIOTT:  That is correct.

17            THE COURT:  I would be surprised if the agencies,

18  whichever ones you're talking about in the intelligence

19  community, were willing to say yea or nay to any of them.  Sit

20  down and have a conversation about them.

21       And that seems to me to be a legitimate position as long

22  as Mr. Kareem's rights to process are recognized and adopted,

23  meaning you have to know about them.  You can't just, I'm not

24  talking to you, I understand you're a lawyer, you are

25  representing them in court, don't take this as a you statement.

1   But the agencies can't just go out and process him or designate

2   him for the kill list without considering that he's a U.S.

3   citizen, that he's entitled to due process, that he lives and

4   works in strange places, et cetera.

5        I'm not sure that that requirement if I were to issue an

6   order requiring the agencies to receive and consider this

7   information if and when or as they ever wanted to target

8   Mr. Kareem and I order them to do so and you assure me that

9   they will, that's about the process that can be obtained under

10  these circumstances isn't it?  And I'm not quite sure why.

11       I mean, I understand what you say about state secrets, but

12  I'm not sure why the government would be against in this

13  circumstance, this is a U.S. citizen who is smart and knows

14  enough and has good counsel and has raised his hand and says

15  you have to listen to me before you decide that I should be put

16  on the kill list.  And you do.  There's a right to that.

17       But then you have to decide yourself based on everything

18  that you know.  There's no guarantee here, it's just due

19  process.  But I don't understand why the government would be

20  opposed to that.

21       Now I have recognized that there could be and probably are

22  U.S. citizens scattered all over the place and any one of them

23  on the basis of this decision could come forward and say wait,

24  stop, okay, give us your data, tell us who you are, here,

25  government, take this, take this into consideration.  Recognize

1   that the person that you are identifying by meta data is a real

2   live person and here's his facts.

3       Now is that inimicable to your clients?

4       MR. ELLIOTT:  Respectfully I think we need to step

5   back for a moment.

6       If this case were to proceed, we would ultimately be at a

7   motion for summary judgment phase where the government would --

8       THE COURT:  Right.

9       MR. ELLIOTT:  -- and plaintiff would need to

10  demonstrate that he has standing and this Court would need to

11  assess whether he has standing.

12      We certainly understand that Your Honor found that at the

13  motion to dismiss phase based on the allegations in the

14  complaint he had met that minimum threshold but he would need

15  to satisfy a higher burden at the motion for summary judgment

16  phase to determine whether he gad standing to establish that.

17      In this case based on all of the claims that have been

18  presented plaintiff would need to establish that he has in fact

19  been authorized for lethal action.

20      The government can either confirm or deny that.  The

21  government considers that to be a classified fact as a

22  threshold matter for standing.  That is why the government is

23  considering whether to invoke the state secrets privilege

24  because this case cannot be litigated potentially.  If the

25  determination is made and the case could not be litigated in

1  the absence of information that is protected by that

2  privilege.

3          THE COURT:  And I followed that.  I really see the

4  logic of what you're saying.

5      I'm trying to in the context in which you're speaking

6  nonetheless recognize that the plaintiff has at least the

7  status of a U.S. citizen and has been the victim of near misses

8  from whomever, but not, not proved not to be the United States

9  if I could put it that way, double negatives seem to be proper

10  right now.

11      And so he wants something that's not very difficult and it

12  doesn't depend on the government acknowledging that it did or

13  did not ever, would or would not in the future ever target him.

14  It's just a recognition of his U.S. citizenship and his

15  constitutional rights.

16      If the government says we can't confirm or deny the

17  underlying facts to prove his standing, well then all we're

18  left with is the complaint.  And I'm not sure why the remedy

19  that I suggest, it seems to me we could almost go to summary

20  judgment right now to tell you the honest truth.

21      I'm not sure why the remedy that I suggest would

22  interfere, imperil or even call to question the state secrets.

23          MR. ELLIOTT:  Well, I think the first is you're

24  asking the government to adopt some alternative form of process

25  before the, the adequacy of whatever process is in place has

1   been determined.  Again, I hate to repeat myself but as a

2   threshold matter --

3           THE COURT:  You can repeat yourself, it's okay.

4           MR. ELLIOTT:  As a threshold matter standing would

5   need to be established at the motion for summary judgment phase

6   before there was any consideration of the adequacy of whatever

7   process would be in place in the hypothetical situation that an

8   individual has been authorized for lethal action.

9       Again, the government's position is that plaintiff would

10  need to demonstrate that he has in fact been authorized for

11  lethal action to establish standing at the motion for summary

12  judgment phase.  That is information that's in the possession

13  of the government and the government can neither confirm nor

14  deny whether he has been authorized.  That is why the

15  government agencies are again considering whether the assertion

16  of the state secrets privilege is necessary.

17          THE COURT:  Yes, again we are sort of talking past

18  each other.  So I'm trying to solve the problem and you're

19  trying to represent your clients.

20      What I'm suggesting to you is that the solution, the

21  remedy that I propose does not interfere with state secrets,

22  does not interfere with the agencies doing their jobs.  The

23  decision to target somebody with a drone is a specific person

24  is not made readily.

25      I mean, I not only know what the Obama administration had

1    put in place for a decision process, but I know about Anwar

2    al-Awlaki and all of that.  It's not a casual decision.  Might

3    be made multiple times, but it's still not a casual decision.

4        We have here a U.S. citizen who says I want you to

5    understand who I am and why I'm in this strange place before

6    you decide because I'm in a strange place that you should kill

7    me.  I'm not quite sure in today's world why that would be so

8    difficult for the agencies to accommodate without any statement

9    of whether, of if, if in the past, if in the future, none of

10   that.  Secrets can remain secret and a remedy can be given to

11   this individual without interference with the secrets.

12           MR. ELLIOTT:  Just so I understand, Your Honor.  Are

13   you suggesting that as a form of settlement the government

14   accept information from plaintiff's counsel and plaintiff

15   himself, is that a fair summary of what you're --

16           THE COURT:  Well, it's a settlement or it's an order.

17   I mean, it depends on which way it goes.

18       Your suggestion is that I could not order that because the

19   plaintiff has not proved that he has standing.  On the other

20   hand, the government is the only one in control of the facts as

21   to whether the plaintiff has standing and the government for

22   legitimate reasons has said we're not going to share those

23   facts.

24       Well, the remedy assuming the fact to the first question

25   were shared, just the first one, did you ever decide to target

1   him?  I'll assume that the government is somehow willing to

2   share the answer to that.  What would we do if that answer were

3   yes?

4       I would order the government to be sure to take into

5   account the information about this plaintiff that it didn't

6   know before, possibly didn't know before.  I don't know what it

7   knew.  Probably you don't know what it knew, if it ever even

8   knew, maybe ever even looked at it.  But assuming the answer to

9   that is yes, what would I order?

10          MR. ELLIOTT:  Again, respectfully, we do believe that

11  plaintiff would have to have standing but plaintiff would also

12  need to demonstrate at the motion for summary judgment phase

13  that the adequacy that was hypothetically afforded to his

14  client was from a constitutional perspective inadequate before

15  Your Honor could issue such an order.

16      That is as Your Honor is aware a balancing test under

17  Matthews v. Eldridge that takes in a number of considerations.

18      But again, stepping back for a moment that is why the

19  agencies are considering whether to assert the state secrets

20  privilege.  Because the process itself may also implicate

21  similar classified information.

22          THE COURT:  I'm sort of assuming it does.  I'm

23  assuming it does and that therefore the government would not be

24  in a position to say, no, no, no, we fully considered what we

25  need to consider.  He received due process as appropriate under

1   these circumstances.

2      I would doubt that the agencies would be willing to come

3   forward to explain that there was an appropriate due process

4   consideration.  Whether there was or not, I have no idea and I

5   wouldn't expect them to tell us.

6      Again, let's say it's in settlement.  Let me change the

7   perspective for a moment and see if that would help us cure

8   this issue.  Because we're in a position where the equities on

9   both sides are pretty strong.  The plaintiff's interest in his

10  life, the government's interest in its secrets.  Those are both

11  things to be respected.

12     So in settlement would the, what is the prospect, what is

13  the prospect that you would and your colleagues have authority

14  to enter into such a settlement with plaintiff?

15         MR. ELLIOTT:  To accept information from plaintiff.

16  I am not in a position today to say what the prospect is.  If

17  that were something that plaintiffs believe could settle the

18  case which I have not heard from them directly, then we can

19  certainly discuss it.

20         THE COURT:  They have been thinking about litigating

21  the case and I have been thinking about resolving the case.

22         MR. ELLIOTT:  Understand.

23         THE COURT:  There's a slight difference of opinion as

24  to how to proceed.  But I don't see discovery as the vehicle.

25  Because you'll just say we can't tell you.  I mean, that's the

1    only thing you can say, we can't tell you, we can't tell you,

2    we can't tell you.  And I understand that.

3         So why don't you go and see whether it would be, whether

4    you would be able to get authority to engage in conversations

5    with the plaintiff as to the nature of information that he and

6    his counsel might submit that the agencies, if they received

7    it, might be willing to accept and consider should the occasion

8    ever arise.  Because it seems to me that doesn't really tread

9    on toes, but that gets a long way to recognizing the equities

10   on both sides of this equation here.

11        MR. ELLIOTT:  That's a conversation I can have with

12   the clients absolutely, Your Honor.

13        THE COURT:  Well good, I hope that you will.

14        Now let me say to plaintiffs that I don't want to, I don't

15   want to suddenly grab your case away from you and say no, no,

16   no, you must settle it this way.  But I do think that the

17   answers you will get to almost any question you ask is the one

18   that we have already received and the answer which is we can

19   neither confirm nor deny and we don't, and we won't and we

20   never will, and however many times counsel can come up with a

21   way to say that.  Because the equities are on their side in

22   that regard as well.

23        I don't know if you have collectively with your client at

24   all considered the possibility of some kind of settlement along

25   the lines we just discussed, but it might be valuable if you

1    did.

2         What about if I stayed the case for let's say 30 days or

3    so and then had a status conference and then we could determine

4    whether the agencies would be willing to authorize counsel to

5    engage in conversation with plaintiff, and the plaintiff would

6    be willing to have his counsel engage in conversations with the

7    agencies or the lawyers for the agencies to work out some sort

8    of non judicial settlement of this dispute which may be the

9    best way out of the problem that we've created.

10        Now the problem exists because the plaintiff has

11   constitutional rights and has come forward and said, me, me,

12   I'm a U.S. citizen, recognize me, give me my due process

13   rights.  The government is in a bind in terms of what they can

14   tell you about all of that.

15        And so my concept is that the best that we can do is

16   arrange for something that approaches private process, a

17   process that you all agree to which is the process which is the

18   only remedy that can be really ordered here.  I don't think I

19   can order the government to -- I can't order them to have an

20   opinion about the plaintiff.  I just can't order that.

21        Whatever opinion they have, whatever data information they

22   have, we do not have access to and won't have access to.  But

23   what he has a right to is a process and the knowledgeable

24   decision by the government recognizing who he is and so why

25   doesn't everybody talk about that.

1        If you would, sir, go back and talk to your clients and

2   see if they would authorize settlement discussions that would

3   be off the record and a private between you that might be

4   sufficient to assure the plaintiff that nothing will happen out

5   of ignorance, out of people just operating on meta data and

6   making assessments from it.

7        So why don't you see if they would be willing to have you

8   engage in such conversations and if you would talk to the

9   plaintiff and see if he would authorize you to engage in such

10  conversations.  I'm not sure.

11       Why don't we just come back in about a month and say, yeah

12  well, we're willing to do this engage in private conversations,

13  let us go do that.

14       In the meantime, why don't we stay the case.  Can you find

15  us a date to propose?

16            THE DEPUTY CLERK:  Yes, Your Honor.

17            THE COURT:  Ms. White says I will be, in 30 days I

18  will be in the midst of the Younger trial.  Ms. Younger has a

19  case that began as a pro se Title VII claimant, probably how

20  long ago, seven years.  Finally, we've been through discovery,

21  we're getting it to trial.

22       So 30 days would be what date, Ms. White?

23            THE DEPUTY CLERK:  It would be the 17th or 20th, Your

24  Honor.

25            THE COURT:  The 17th or the --

1          THE DEPUTY CLERK:  Twenty-first actually.

2          THE COURT:  Of July.

3          THE DEPUTY CLERK:  August.

4          THE COURT:  August.  Do you have a preference?  I

5     would have to do this either at noon or at 4:30.  Noon would be

6     my preference.

7          THE DEPUTY CLERK:  You wouldn't be here on the 17th

8     anyway.

9          THE COURT:  I won't be here on the 17th.

10        What's the date I'm offering?

11         THE DEPUTY CLERK:  The 21st or the 22nd.

12         THE COURT:  The 21st or 22nd.  Forgive me, I

13    misunderstood.

14        Can you do that?

15         MS. PLOCHOCKI:  That's fine with plaintiffs, Your

16    Honor.

17         MR. ELLIOTT:  We prefer the 21st.

18         MS. PLOCHOCKI:  We prefer the 22nd, Your Honor.

19         THE COURT:  The 22nd.

20         MR. ELLIOTT:  We have some conflicts with preexisting

21    leave, Your Honor.  Could we move that out one week, is that

22    possible?

23         THE COURT:  You mean to the 29th?

24         MR. ELLIOTT:  Yes, that week.

25         THE COURT:  What is the next week?

1        THE DEPUTY CLERK:  Your Honor, we could do it on the

2  28th at 10:30.

3        THE COURT:  The 28th, are you guys free on the 28th?

4  Are you men and women free on the 28th?

5        MS. PLOCHOCKI:  We are, Your Honor.

6        THE COURT:  All right.

7        MS. PLOCHOCKI:  At 10:30 if we could.

8        THE COURT:  At 10:30.

9        MR. ELLIOTT:  The 28th at 10:30, that works for us.

10        THE COURT:  Thank you.

11     Maybe I could say may the force be with you.  Does

12  everybody know may the force be with you?  We have to be very

13  careful.

14     Anyway, good luck everybody, see if you can be creative

15  and help us reach a resolution here recognizing as I say that

16  both sides have legitimate points of view.

17     Thank you.

18        MR. ROBINSON:  Thank you, Your Honor.

19        MS. PLOCHOCKI:  Thank you, Your Honor.

20        MR. ELLIOTT:  Thank you.

21        (Proceedings adjourned at 10:45 a.m.)

22                          -oOo-

23

24

25

1                        CERTIFICATE

2        I certify that the foregoing is a true and correct

3    transcript, to the best of my ability, of the above pages, of

4    the stenographic notes provided to me by the United States

5    District Court, of the proceedings taken on the date and time

6    previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8    to, nor employed by any of the parties to the action in which

9    this hearing was taken, and further that I am not financially

10   nor otherwise interested in the outcome of the action.

11

12

13   _____        _____

14   /s/Crystal M. Pilgrim, RPR, FCRR      Date: September 8, 2018

15

16

17

18

19

20

21

22

23

24

25